1  CHRISTI HOGIN, Bar No. 138649
   Christi.Hogin@bbklaw.com
2  JOHN C. COTTI, Bar No. 193139
   John.Cotti@bbklaw.com
3  KATHY J. SHIN, Bar No. 318185
   Kathy.Shin@bbklaw.com
4  BEST BEST & KRIEGER LLP
   1230 Rosecrans Avenue
5  Suite 110
   Manhattan Beach, California  90266
6  Telephone:   (310) 643-8448
   Facsimile:    (310) 643-8441
7
   Attorneys for Defendant
8  CITY OF MALIBU

9

                    UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11

12
   DENNIS SEIDER and LEAH SEIDER,        Case No. 2-20-cv-08781 PA (MRWx)
13 as Trustees of the Seider Family Trust,
                                          **CITY OF MALIBU'S NOTICE OF
14            Plaintiff,                   MOTION AND MOTION TO
                                          DISMISS PLAINTIFFS'
15       v.                               COMPLAINT AND, IN THE
                                          ALTERNATIVE, MOTION FOR
16 CITY OF MALIBU,                        JOINDER OF REQUIRED
                                          PARTY; MEMORANDUM OF
17            Defendant.                   POINTS AND AUTHORITIES IN
                                          SUPPORT OF MOTION**

18
                                          *Filed Concurrently with*
19                                        1. *City's Request for Judicial Notice*
                                          2. *Declaration re Meet and Confer*
20
                                          Honorable Percy Anderson Presiding
21
                                          Date:   January 4, 2021
22                                        Time:   1:30 p.m.
                                          Dept:   Courtroom 9A
23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

**TO THE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on January 4, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9A of the above-entitled court, Defendant City of Malibu ("City") will and hereby does move this Court for an order dismissing the First, Second, Third, Fourth, and Fifth Claims for Relief in Plaintiffs Dennis Seider and Leah Seider's ("Plaintiffs" or "the Seiders") Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs challenge the constitutionality of provisions that the City did not enact and which do not apply to Plaintiffs, whose permits are within the purported jurisdiction of the California Coastal Commission. Accordingly, the City moves for dismissal without leave to amend on the grounds that Plaintiffs lack standing to maintain this action and fail to state a claim upon which relief may be granted.  In the alternative, pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, the City will and hereby does move this Court to order joinder of the California Coastal Commission as a required party.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN") served and filed concurrently herewith, the pleadings, and all matters which the Court may properly consider at the time of hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 5, 2020, November 6, 2020, and November 25, 2020 as detailed in the Declaration served and filed concurrently herewith.

Dated:  December 3, 2020                           Respectfully submitted,


By: */s/ Christi Hogin*
_____
                CHRISTI HOGIN
                JOHN C. COTTI
                KATHY J. SHIN
                BEST BEST & KRIEGER, LLP
                Attorneys for Defendant City of Malibu

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND .................................................................................................... 3

    A.    The Coastal Commission's Permitting and Enforcement
        Authority ................................................................................................. 3

    B.    The Commission's Notice of Violation to the Seiders ........................... 6

III.  Rule 12(b)(1): PLAINTIFFS' CLAIMS PRESENT NO
     CONTROVERSY; THUS THIS COURT LACKS SUBJECT
     MATTER JURISDICTION .................................................................................. 8

    A.    Plaintiffs Lack Standing to bring their First and Second
        Claims .................................................................................................... 9

    B.    Plaintiffs Lack Standing to bring their Third and Fourth
        Claims .................................................................................................. 12

    C.    Plaintiffs' Third and Fourth Claims are not Ripe for
        Judicial Review .................................................................................... 15

    D.    Plaintiffs Lack Standing to bring their Fifth Claim of Relief ............. 16

    E.    Supplemental Jurisdiction is Not Warranted ...................................... 17

IV.   Rule 12(b)(6): PLAINTIFFS FAIL TO STATE A CLAIM
     UNDER 42 U.S.C. § 1983 UPON WHICH RELIEF CAN BE
     GRANTED ......................................................................................................... 18

    A.    Plaintiffs' First and Second Claims Fail to State a Claim of
        Municipal Liability under 42 U.S.C. § 1983 ...................................... 19

    B.    Plaintiffs' Third Claim Fails to Allege a Plausible Violation
        of the Unconstitutional Conditions Doctrine ..................................... 20

    C.    Plaintiffs' Fourth Claim Fails to State a Plausible Claim of
        Overbreadth and Fails to Allege Facts to Support an As-Applied
        Challenge ............................................................................................. 21

V.    Rule 12(b)(7) (ALTERNATIVE RELIEF): THE CALIFORNIA
     COASTAL COMMISSION MUST BE JOINED AS A REQUIRED
     PARTY ............................................................................................................... 24

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

# TABLE OF AUTHORITIES

**Federal Cases**

*Agency for Intern. Development v. Alliance for Open Society Intern., Inc.*
  570 U.S. 205 (2013) ...................................................................................... 20

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ...................................................................................... 19

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*
  950 F.2d 1401 (9th Cir. 1991) ...................................................................... 14

*Bova v. City of Medford*
  564 F.3d 1093 (9th Cir. 2009) ...................................................................... 15

*City of Los Angeles v. Lyons*
  461 U.S. 95 (1983) .................................................................................... 8, 12

*Clapper v. Amnesty Int'l USA*
  568 U.S. 398 (2013) ................................................................ 9, 12, 13, 14, 15

*Clark v. Cmty. for Creative Non-Violence*
  468 U.S. 288 (1984) ...................................................................................... 21

*Collins v. City of Harker Heights, Tex.*
  503 U.S. 115 (1992) ................................................................................ 19, 21

*DaimlerChrysler Corp. v. Cuno*
  547 U.S. 332 (2006) ........................................................................................ 8

*E.E.O.C. v. Peabody W. Coal Co.*
  400 F.3d 774 (9th Cir. 2005) .................................................................... 24, 25

*Forsyth County, Ga. v. Nationalist Movement*
  505 U.S. 123 (1992) ................................................................................ 20, 22

*Gillette v. Delmore*
  979 F.2d 1342 (9th Cir.1992) ........................................................................ 19

*Kaahumanu v. Hawaii*
  682 F.3d 789 (9th Cir. 2012) ........................................................................ 23

*Laird v. Tatum*
  408 U.S. 1 (1972) .......................................................................................... 14

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*
    827 F.3d 1192 (9th Cir. 2016) ....................................................................22, 23

*Long Beach Area Peace Network v. City of Long Beach*
    574 F.3d 1011 (9th Cir. 2009) .......................................................................... 13

*Los Angeles Cty., Cal. v. Humphries*
    562 U.S. 36 (2010) ............................................................................................ 19

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) ..........................................................8, 9, 10, 11, 12, 25

*M.S. v. Brown*
    902 F.3d 1076 (9th Cir. 2018) ............................................................9, 10, 12

*Madsen v. Boise State Univ.*
    976 F.2d 1219 (9th Cir. 1992) ....................................................................16, 17

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*
    466 U.S. 789 (1984) .....................................................................................21, 22

*Monell v. Dep't of Soc. Servs. of City of New York*
    436 U.S. 658 (1978) .......................................................................................... 19

*Munns v. Kerry*
    782 F.3d 402 (9th Cir. 2015) ............................................................................ 13

*NAACP v. City of Richmond*
    743 F.2d 1346 (9th Cir. 1984) ....................................................................13, 14

*Perry v. Sindermann*
    408 U.S. 593 (1972) .......................................................................................... 20

*Protectmarriage.com-Yes on 8 v. Bowen*
    752 F.3d 827 (9th Cir. 2014) ..............................................................8, 15, 16, 23

*Renne v. Geary*
    501 U.S. 312 (1991) ............................................................................................ 8

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*
    547 U.S. 47 (2006) ............................................................................................ 20

*Santa Monica Food Not Bombs v. City of Santa Monica*
    450 F.3d 1022 (9th Cir. 2006) .......................................................................... 23

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ............................................................. 19, 20

*Washington State Grange v. Washington State Republican Party*
  552 U.S. 442 (2008) ........................................................................ 21, 22

**State Cases**

*City & Cnty. of San Francisco v. Bd. of Permit Appeals*
  207 Cal. App. 3d 1099 (1989) ................................................................ 17

*City of Malibu v. California Coastal Com.*
  121 Cal. App. 4th 989 (2004) ....................................................... 1, 3, 11

*Ross v. California Coastal Com.*
  199 Cal. App. 4th 900 (2011) ................................................................... 1

*Yost v. Thomas*
  36 Cal.3d 561 (1984) ................................................................................ 3

**Federal Statutes**

28 U.S.C. § 1367(c)(1) ............................................................................... 17

28 U.S.C. § 1367(c)(3) ............................................................................... 18

28 U.S.C. § 2201 .......................................................................................... 8

42 U.S.C. § 1983 ................................................................................ *passim*

**State Statutes**

Cal. Code Civ. Proc. § 1094.5 .............................................................. 17, 18

Cal. Civ. Code § 2778 ........................................................................... 14, 23

Cal. Pub. Res. Code

  § 30166.5 ............................................................................... 1, 3, 11

  § 30166.5(b) ....................................................................................... 3

  § 30500(a) .......................................................................................... 3

  § 30514(a) ......................................................................................... 11

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

§ 30519(a) ......................................................................................................... 5

§ 30600(a) ......................................................................................................... 3

§ 30603 .............................................................................................................. 5

§ 30603(a) ......................................................................................................... 4

§ 30801 ................................................................................................... 14, 18, 24

§ 30802 ............................................................................... 5, 14, 15, 18, 24, 25

§ 30809 ..................................................................................................... 5, 25

§ 30810 ..................................................................................................... 5, 25

§ 30821.6(a) ....................................................................................................... 6

§ 30821(a) ........................................................................................................... 6

**Court Rules**

Fed.R.Civ.P. 12(b)(1) ........................................................................................ 8

Fed.R.Civ.P. 12(b)(6) ...................................................................................... 18

Fed.R.Civ.P. 12(b)(7) ...................................................................................... 24

Fed.R.Civ.P. 19 ................................................................................................ 24

Fed.R.Civ.P. 19(a) ........................................................................................... 24

Fed.R.Civ.P. 19(a)(1) ....................................................................................... 24

Fed.R.Civ.P. 19(a)(1)(A) .................................................................................. 24

Fed.R.Civ.P. 19(a)(1)(B)(i) .............................................................................. 25

Fed.R.Civ.P. 19(a)(1)(B)(ii) ............................................................................. 25

Fed.R.Civ.P. 19(a)(2) ....................................................................................... 24

**Constitutional Provisions**

U.S. Const. Article III, § 2 ................................................................................ 8

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

**Other Authorities**

85 Ops. Cal. Atty. Gen. 21 (2002) ........................................................................ 23

Malibu Local Coastal Program Local Implementation Plan

§ 2.1 ........................................................................................................ 4

§ 3.15 ....................................................................................................... 7

§ 3.15.3(X) ................................................................................. 6, 7, 9, 11, 16

§ 3.15.4(C) ......................................................................................... 9, 11

§ 13.3(A) ................................................................................................. 3

§ 13.4 ...................................................................................................... 4

§ 13.7(B) ........................................................................................... 4, 17

§ 13.9(A) ........................................................................................... 7, 25

§ 13.10 ............................................................................................... 2, 3

§ 13.10.2(B) ..................................................................................... 4, 17

§ 13.11 .............................................................................................. 4, 17

§ 13.12.1 ........................................................................................... 4, 17

§ 13.20 ................................................................................ 3, 5, 12, 14

§ 13.20.2(A) ........................................................................................... 5

Malibu Municipal Code § 17.68.070(R) ........................................... 4, 23

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1250 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

**I. INTRODUCTION**

The Seiders bring this action against the City of Malibu to challenge the California Coastal Commission's ("Commission") enforcement of state law. But the City does not belong in this case.  In summary, a public access easement, recorded according to the terms of a Commission-issued coastal development permit ("CDP"), encumbers the private beach abutting the Seiders' Malibu residence. (Compl. ¶¶ 23, 24.)  The Commission imposed this condition and the Commission enforces this condition. And when the Seiders posted signs on their property to demarcate the easement area from unencumbered private beach, the Commission notified Plaintiffs that they were in violation of the California Coastal Act. (Compl. ¶ 26.)  Among other deficiencies, the signs were posted without the benefit of a CDP, as required by the Coastal Act and the Malibu Local Coastal Program ("LCP") Local Implementation Plan ("LIP"). (Compl. Ex. 3 at 24.)

The Malibu LCP, including the LIP, was drafted, adopted, and certified by the Commission, under authority of a special state law. (Cal. Pub. Res. Code § 30166.5; *Ross v. California Coastal Com.*, 199 Cal. App. 4th 900, 924 (2011).) Pursuant to this statutory authority, the Commission has purported to give itself jurisdiction over CDPs for development "that would lessen or negate the purpose of" any condition in a Commission-issued coastal permit. (LIP § 13.10.2(B)(2).) According to Commission staff, the Seiders' sign would undermine the existing CDP for their residence by deterring public use of the beach. (Compl. ¶ 26, Ex. 3 at 26.)  For this reason, "[e]ven if" the Seiders had applied for a permit, "it is unlikely that Commission staff would recommend approval." (Compl. Ex. 3 at 25.)

As the Seiders well know, in 2004 the City unsuccessfully contested the foregoing special law that usurped local control over the precise local land use policies in its LCP.[1]  The California Court of Appeal upheld the LCP, as drafted by

---

[1] *See generally City of Malibu v. California Coastal Com.* (*CCC*)*, 121 Cal. App. 4th 989 (2004) (including an appearance by Dennis J. Seider for Californians for Local Coastal Planning as Amicus Curiae); *review denied*, S128209 (2004).

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

the Commission, as valid, no part of which may be amended without Commission certification (Compl. ¶ 15).  To be sure, the City plays a role in the application intake process.  Had the Seiders applied for a CDP, which they did not (Compl. ¶ 36), the LCP directs City staff to forward the application for Commission review.  (LIP §§ 13.10(A)(1) and 13.10.2(B)(2).)  And "the Commission may" and does "assume primary responsibility for enforcement of Coastal Act violations . . . as is the case here." (Compl. Ex. 3 at 27.)

Simply put, the Seiders' dispute is not with the City. Having witnessed defeat against the Commission in state court, they ask this Court to declare them in the right against a faux adversary—they are seeking an advisory opinion.  To this end, Dennis Seider asked City staff about obtaining a CDP "so as to not run afoul of the Coastal Commission[]." (Compl. ¶ 27.)  Staff gave its candid assessment about his prospects under the LCP (Compl. ¶ 31), and Plaintiffs construe this exchange as the City's "denial" (Compl. ¶ 33) driving the present "controversy" (Compl. ¶ 9).

Plaintiffs' case fails at the threshold because they lack standing to bring their claims for relief.  Counts One and Two against the LIP are not fairly traceable to any City action and the requested relief lacks redressability.  Counts Three and Four against the indemnification clause in the Malibu Uniform Application for permits— which would function here as the Commission's CDP application—fail to allege an injury in fact, and the claims are not ripe for judicial review.  Count Five against "Malibu's actions" under state law likewise fails because the Seiders did not submit an application on which the City could act.  The Complaint is wholly speculative.

Plaintiffs also fail to state a claim of municipal liability under 42 U.S.C. § 1983.  Insofar as they attack the LIP, state policy, not city policy, is responsible for deprivation, if any, of the Seiders' First Amendment right to post their sign.  Insofar as Plaintiffs attack the indemnification clause, they fail to state a plausible claim under either the unconstitutional conditions doctrine or the overbreadth doctrine, and they do not allege any facts to otherwise claim a constitutional violation.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

1  **II. BACKGROUND**

2   **A. The Coastal Commission's Permitting and Enforcement Authority**

3   The California Legislature enacted the Coastal Act of 1976 to establish a

4  comprehensive scheme of land use planning for California's coastal zone. (*Yost v.*

5  *Thomas*, 36 Cal.3d 561, 565 (1984).)  The Commission is charged with

6  administering the Act on behalf of the state, and, in general, each local government

7  lying in whole or in part within the coastal zone is responsible for preparing an LCP

8  to implement the Act's policies at the local level. (Cal. Pub. Res. Code ("CPRC") §

9  30500(a).)  This general rule does not apply in Malibu.  In 2000, the Legislature

10  enacted a special law directing the Commission to prepare and certify Malibu's

11  LCP, which it did, including the LIP sections challenged in the Complaint. (*Id.* §

12  30166.5; *Malibu v. CCC*, 121 Cal. App. 4th at 992-93; Compl. ¶ 16.)

13   Except in cases not relevant here, "any person wishing to . . . undertake any

14  development in the coastal zone" must obtain a CDP.  (RJN Ex. A at 49, LIP §

15  13.3(A); *see also* CPRC § 30600(a).)  "Development"—defined broadly to include

16  the "erection of any solid material" and any "change in the intensity of use of water,

17  or of access thereto" (Compl. Ex. 3 at 27)—captures structures of varying impact,

18  from garages to seawalls (*see* 121 Cal.App.4th at 994). "With an LCP in place,

19  Malibu shoulders the burden" of processing CDPs for all these uses (*Id.* at 992), as

20  it assumes permitting authority. (CPRC § 30166.5(b).)

21   Local permitting authority, however, does not extend to developments over

22  which the Commission retains original jurisdiction (RJN Ex. A at 64, LIP §

23  13.10.2), and any "appealable CDP" remains subject to the Commission's final

24  approval. (*Id.* at 74, LIP § 13.20.)  Pursuant to the terms of LIP Chapter 13, which

25  governs CDPs, the City Planning Director determines the applicable review

26  procedure, "[a]t the time a complete application for a Coastal Development Permit

27  is made." (*Id.* at 63, LIP § 13.10.)[2]  The City of Malibu Planning Department

28  _____

[2] In pertinent part, LIP § 13.10 states:

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

Uniform Application is required for any permit or project processed by the City, including CDPs and temporary use permits (TUPs). (RJN Ex. B at 91.)  The application includes an indemnification clause, which applies when an action is brought against the City's approval of a permit. (*See, e.g.,* Malibu Municipal Code § 17.68.070(R) (requiring as a condition for a TUP: "The applicant shall defend, indemnify, and hold harmless the city and its officers, agents, and employees from any claim, action or proceeding against the city or its officers, agents, or employees to attack, set aside, void, or annul approval of this permit").) (RJN Ex. C at 95.)

New development "that would lessen or negate the purpose of any specific permit condition . . . [or] any recorded offer to dedicate [an] easement" in a Commission-issued CDP requires the Commission's direct approval. (RJN Ex. A at 64, LIP § 13.10.2(B)(2).)  Apart from the Planning Director's threshold review for jurisdiction, these applications are not otherwise reviewed by the City. (*Id.*)  Rather, applicants "must seek to file an application with the Coastal Commission for . . . authorization for the proposed new development." (*Id.*, LIP § 13.10.2(B).)

For CDPs that are not originally decided by the Commission, the Planning Director may decide applications for an administrative permit, whereas, in general, applications for a CDP that is appealable to the Commission must be reviewed and decided by the City Planning Commission after a duly noticed public hearing. (RJN Ex. A at 62, 65-67, LIP §§ 13.7(B), 13.11, 13.12.1.)  An "appealable CDP" is required for "[d]evelopments approved by the City . . . within three hundred feet (300') of the inland extent of any beach . . . ." (RJN Ex. A at 6, LIP § 2.1 (defining "appealable coastal development permit"); CPRC § 30603(a).)

Unlike trial court judgments, the City's decision on an appealable CDP is not

---

"A.    Types of Applications. The Planning [Director] shall first determine whether the proposed development is:
1.    Subject to the requirement for a [CDP] or permit amendment from the Coastal Commission;
2.    Appealable to the Coastal Commission consistent with Chapter 2 of the [LIP];
3.    Exempt from the [CDP] requirements as defined in Section 13.4 of the [LIP];
4.    Subject to the requirement of securing a [CDP] to be issued by the City."

final for purposes of judicial review or operative effect:

> Development pursuant to an approved coastal development permit shall not commence until the [CDP] is effective. The [CDP] is not effective until all appeals, including those to the Coastal Commission, have been exhausted.  In the event that the Coastal Commission denies the permit . . . on appeal, the [CDP] approved by the city is void.

(RJN Ex. A at 74, LIP § 13.20; *see also* CPRC § 30519(a) (delegating development review authority to local government after an LCP has been certified "[e]xcept for appeals to the commission, as provided in Section 30603").)  Permit applicants "aggrieved by the decision or action of a local government that is implementing a certified [LCP]" have a right to judicial review in state court, if the local action "may not be appealed to the commission." (CPRC § 30802.)

And unlike judicial appellate jurisdiction, the Commission exercises its appellate authority as an interested party in the enforcement of Coastal Act policies. (*See* Compl. Ex. 3 at 24 ("The . . . Commission is the state agency created by, and charged with administering, the Coastal Act . . .")  To this end, local permitting decisions may be appealed for Commission review by an aggrieved person "or by any two members of the Coastal Commission." (RJN at 75, LIP § 13.20.2(A)).

In addition to its permitting authority, the Commission may exercise principal enforcement authority over violations of the Coastal Act, including violations of a certified LCP. (Compl. Ex. 3 at 27.)  The Executive Director of the Commission, or the Commission after a public hearing, may issue a cease and desist order to "any person or governmental agency" whom the Director, or Commission, determines "is threatening to undertake . . . activity that (1) may require a permit from the commission without securing a permit or (2) may be inconsistent with any permit previously issued by the commission." (CPRC §§ 30809 (Director); 30810 (Commission).)  In specified circumstances, an order may be issued "to enforce any requirements of a certified [LCP]." (*Id.*)

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

Violations of a cease and desist order are subject to civil penalties. (Compl. Ex. 3 at 27; CPRC § 30821.6(a).) The Commission may also impose administrative penalties for violations of the Coastal Act's public access requirements. (Compl. Ex. 3 at 27; CPRC § 30821(a).)

**B. The Commission's Notice of Violation to the Seiders**

Based on the foregoing regulatory scheme, on April 29, 2020, Commission Code Enforcement staff issued the Seiders a Notice of Violation of the California Coastal Act ("Notice"). (Compl. ¶ 26.)  The Seiders are successors in interest to property developed pursuant to a Commission-issued development permit. (Compl. ¶ 23.)  The permit is conditioned on maintenance of a public access easement 25 feet inland of the mean high tide line. (*Id.*)  To notify the public as to where the rights of public access end, the Seiders posted "PRIVATE BEACH" signs on their property (Compl. ¶ 25) without the benefit of a CDP. (Compl. Ex. 3 at 28.)  As the signs are "development" not exempt from statutory CDP requirements (Compl. Ex. 3 at 24), the Notice informed the Seiders of their violation and of the opportunity for voluntary compliance to avoid formal enforcement action. (Compl. Ex. 3 at 28.)

Commission staff suggested that removing the signs was the only way to achieve compliance. (Compl. Ex. 3 at 28.)  For "[e]ven if" the Seiders had applied for a CDP, the Notice states that "Commission staff" is unlikely to recommend approval because the signs "discourage public access and purport to identify the boundary between private property and public beach." (Compl. Ex. 3 at 25.)  As such, they are (1) inconsistent with the Coastal Act's public access policies (Compl. Ex. 3 at 25-26); (2) contrary to "the intended effect of the previously issued CDP" (Compl. Ex. 3 at 26); and (3) expressly prohibited by section 3.15.3(X) of the LIP (Compl. Ex. 3 at 27).  (*See also* Compl. ¶ 26.)

After removing their signs, on June 1, 2020, Dennis Seider ("Dennis") emailed the City Planning Director about obtaining a permit for replacement signs, proposing new language to demarcate the line between private property and public

Best Best & Krieger LLP
Attorneys at Law
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, California 90266

2-20-CV-08781 PA (MRWX)
MEMO OF POINTS AND AUTHORITIES

access. (Compl. ¶ 27-30.)  The Planning Director replied that "according to the LCP, a sign like this is not allowed [and referred Dennis to LIP § 3.15.3(X)].  If you wanted to apply anyway, a CDP would be needed." (Compl. ¶ 31.)  Dennis subsequently emailed the Director and the City Council about the matter, asking "Can we amend this LIP . . .?" (Compl. Ex. 5 at 33; Compl. ¶ 34.)  He also asked about the application's indemnity clause. (Compl. Ex. 4 at 29.)  In pertinent part, the Director replied as follows: "The indemnification is a standard requirement for filing any type of application with the city and for accepting any permit that is approved by the city.  I don't have any flexibility to change that.  [¶] In terms of amending the LCP . . . [the] change would [] ultimately have to be certified by the Coastal Commission in order to become effective." (Comp. Ex. 6 at 35.)

The Seiders did not apply for a CDP or apply to amend the LCP; instead, they had their property surveyed to determine the location of the mean high-tide line and lateral access easement. (Compl. ¶¶ 36, 37.)  On September 10, Dennis emailed the Director and the Mayor with new language for a sign based on the surveyed lines, stating "I suggest we be allowed to post a sign as follows . . ." (Compl. Ex. 8 at 39.)  In reply, the Director again noted "[t]his type of sign would require a CDP and the language falls into the category I emailed you about . . . that is prohibited . . . I don't think the Planning Commission would be able to make the findings to approve it, but there is nothing stopping you from applying." (Compl. Ex. 8 at 38-39; *see also* RJN at 62-63, LIP § 13.9(A) (stating "[a]ll decisions on [CDPs] shall be accompanied by written findings" of compliance with the LCP).)[3] Up to this point, the Director did not realize that the Seiders' residence was subject to a Commission-issued CDP, and she subsequently noted, "If you are proposing to dedicate [an access easement] . . . the Coastal Commission's attorney . . . always requires that the surveyor identify the mean high tide line as ambulatory.  So, even if you were to record [an] easement, I think the LCP . . . would still prohibit posting

---

[3] The LCP includes the sign regulations in LIP Section 3.15. (*See* RJN Ex A at 33-48.)

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

a sign.  Again, you could contact Coastal Commission staff and ask . . ." (Compl. Ex. 8 at 38.)  Two weeks later, the Seiders filed the present Complaint.

## III. Rule 12(b)(1): PLAINTIFFS' CLAIMS PRESENT NO CONTROVERSY; THUS THIS COURT LACKS SUBJECT MATTER JURISDICTION

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2.  Two components of a justiciable controversy are ripeness and standing.  The "irreducible constitutional minimum of standing contains three elements": (1) injury in fact, (2) that is fairly traceable to the defendant, and (3) likely to be redressed by a favorable decision. (*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).)  Plaintiffs bear the burden of establishing these elements for each claim and each request for relief. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Lujan*, 504 U.S. at 561.

The ripeness inquiry overlaps with the "injury in fact" prong of the standing analysis. (*Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014).)  Viewed either as a matter of standing or ripeness, the question for federal courts is "whether the plaintiff faces a realistic danger of sustaining a direct injury [by] the [challenged] statute's operation or enforcement . . . or whether the alleged injury is too imaginary or speculative to support jurisdiction." (*Id.*)  As declared by the Ninth Circuit, courts "have no right to pronounce an abstract opinion upon the constitutionality of a state law." (*Id.* at 840.)  Accordingly, plaintiffs must present "an actual or imminent application of [a law] sufficient to present the constitutional issues in clean-cut and concrete form." (*Renne v. Geary*, 501 U.S. 312, 322 (1991).)

To be sure, under the Declaratory Judgment Act, 28 U.S.C. § 2201, federal courts may declare the rights and duties of litigants before a law is violated.  Yet consistent with Article III, any such pre-enforcement review may be granted only "[i]n a case of actual controversy." (28 U.S.C. § 2201.)  In general, plaintiffs seeking injunctive or declaratory relief must show a sufficient likelihood of future harm. (*City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).)

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

**A. Plaintiffs Lack Standing to bring their First and Second Claims**

The Seiders' first cause of action seeks a declaration that LIP § 3.15.3(X) is an unconstitutional content-based speech restriction and "injunctive relief prohibiting Malibu from enforcing" the section. (Compl. ¶ 49.)  Their second cause of action seeks a declaration that three specified criteria in LIP § 3.15.4(C) impose an "unconstitutional prior restraint on speech" (Compl. ¶ 57), and a "permanent injunction prohibiting Defendant from enforcing [these] provisions . . . against Plaintiffs." (Compl. ¶ 59; Prayer ¶ 5.)  Both claims of relief are brought against the City pursuant to 42 U.S.C. § 1983 on the theory that City "retains policies, as part of the LIP certified by the Coastal Commission," which prevent the Seiders from obtaining a sign CDP. (Compl. ¶¶ 44, 53.)

To establish standing to bring these claims, the Seiders must show that their alleged injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (*Lujan*, 504 U.S. at 560 (internal quotations omitted).)  Theories of standing cannot be based on a "chain of contingencies" that require "guesswork as to how independent decisionmakers will exercise their judgment." (*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-13 (2013).)  Moreover, if a court could not require the defendant to redress the claimed harm, a plaintiff cannot demonstrate redressability "unless she adduces facts to show that the defendant or a third party are nonetheless likely to provide redress as a result of the decision." (*M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).)

In *Clapper*, plaintiffs lacked standing to seek declaratory and injunctive relief against an amendment to the Foreign Intelligence Surveillance Act (FISA) that allegedly violated constitutional rights. (568 U.S. at 407.)  The Court found that plaintiffs had "no actual knowledge" of the Government's surveillance practices, and based their theory of standing on a "speculative fear" as to how they might be injured. (*Id.* at 410-11.)  Plaintiffs' theory assumed, among other contingencies, that

1   (1) the Government would target their foreign communications, (2) in doing so, the

2   Government would invoke its authority under the FISA amendment rather than use

3   its other surveillance authorities, which plaintiffs had not challenged, and (3) the

4   Surveillance Court would issue the necessary approvals (*Id.* at 410.)  Even

5   assuming injury, this "speculative chain of possibilities" failed to show that said

6   injury was fairly traceable to the challenged law. (*Id.* at 413-14.)

7          In *Lujan*, plaintiffs lacked standing to seek a declaration against regulations

8   interpreting agency consultation requirements under the Endangered Species Act.

9   (504 U.S. at 568.)  Because the agencies funding the projects subject to consultation

10  were not parties to the case, the Court found that even if the defendant Secretary

11  could be ordered to revise the regulations, it was "an open question" whether the

12  judgment would be binding on the funding agencies. (*Id.* at 568-69 ("They were not

13  parties to the suit, and there is no reason they should be obliged to honor an

14  incidental legal determination the suit produced").)  The relief lacked redressability.

15         In *Brown*, the Ninth Circuit likewise found that the requested declaratory

16  relief was unlikely to redress the plaintiff's injury. (902 F.3d at 1085.)  Plaintiff was

17  challenging the results of a referendum on a state law that would have authorized

18  issuance of "driver cards" consistent with the federal REAL ID Act. (*Id.* at 1081.)

19  Even assuming the plaintiff's claims had merit (that the referendum was motivated

20  by unconstitutional animus and resulted in deprivation of her driving privileges),

21  under the state Constitution, legislative enactments referred to the people could not

22  become law absent majority voter approval. (*Id.* at 1084.)  Plaintiff did not

23  challenge the referral, and the Circuit found that her requested declaration could not

24  give effect to the legislative enactment authorizing driver cards (which required

25  majority voter approval) to remedy her injury. (*Id.* at 1085.)  It also found that the

26  district court could not, in violation of democratic principles and principles of

27  federalism, otherwise order the Governor to issue driver cards (which would have

28  required the Governor to effectuate a bill that never became law). (*Id.* at 1085-86.)

Best Best & Krieger LLP
Attorneys at Law
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, California 90266

1    As detailed in Part II above, the Commission, not the City, drafted and

2  certified the Malibu LIP.  The City thus "retains" the challenged provisions insofar

3  as it is required to process CDP applications, by state law and court order,

4  consistent with the requirements of the LCP. (CPRC § 30166.5; *Malibu v. CCC*,

5  121 Cal. App. 4th at 999 (affirming an injunction ordering the city to implement the

6  LCP and process permits).)  Moreover, "no part of an LCP can be amended without

7  the Commission's certification." (Compl. ¶ 15; CPRC § 30514(a) (local

8  amendments to LIPs do not take effect until certified by the Commission).)

9  Therefore, insofar as policies in the LIP "effectively prohibit [the Seiders] from

10 obtaining the necessary CDP" to post signs that do "not run afoul of the []

11 Commission's objection" (Compl. ¶¶ 27, 44), this alleged injury is not fairly

12 traceable to any action by the City.  Indeed, even if this Court were to declare LIP

13 sections 3.15.3(X) and 3.15.4(C) unenforceable, it could not secure the Seiders a

14 CDP to redress their injury. That relief is in the Commission's hands. The Seiders

15 thus lack standing.

16   First, even if this Court were to declare the challenged LIP provisions

17 unenforceable, it could not enjoin the Commission from applying the provisions in

18 *that body's* approval or denial of the Seiders' CDP because the Commission is not a

19 party to this action. (*See Lujan*, 504 U.S. at 568-69.)

20   Second, the Commission could still deny the Seiders a CDP based on the

21 other grounds stated in the April 29, 2020 Notice of Violation (Compl. Ex. 3 at

22 27)—grounds that the Seiders have not challenged.  Specifically, the Seiders have

23 not challenged Commission regulations prohibiting new development that "would

24 lessen the intended effect" of a previously issued CDP (Compl. Ex. 3 at 26).  And

25 even if the Commission were to find that the Seiders' proposed signs would not

26 lessen the intended effect of the Commission-issued CDP for their residence, the

27 Commission could still deny them a sign CDP as inconsistent with the Coastal

28 Act's public access policies (Compl. Ex. 3 at 25-26).  As the Seiders have not

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

challenged these policies, this Court could not declare them unenforceable to redress Plaintiffs' injury. (*See Lujan*, 504 U.S. at 568-69; *Brown*, 902 F.3d at 1085.)

Finally, if, notwithstanding the Commission's original jurisdictional under LIP § 13.20, the City were to issue the Seiders a sign CDP, the Seiders could only speculate as to whether the Commission would acknowledge the permit's validity, and if so, whether it would be upheld on appellate review.  And were the Seiders to post signs with said City-issued CDP, they could only speculate as to whether or not the Commission would proceed with formal enforcement action as detailed in its April 29, 2020 Notice. (Compl. Ex. 3 at 27.)  This chain of contingencies fails to establish an injury that is fairly traceable to either the City's "retention" of the LIP or to the challenged LIP provisions. (*See Clapper*, 568 U.S. at 414.)

**B. Plaintiffs Lack Standing to bring their Third and Fourth Claims**

Pursuant to 42 U.S.C. § 1983, the Seiders allege that the City required them to "agree to the indemnification clause" (Compl. ¶¶ 61, 67) in the Malibu Uniform Application for permits, which clause "prohibits them from even applying for a sign CDP," thereby infringing on "Plaintiffs' free speech rights" (Compl. ¶ 63, 68).

An injury sufficient to satisfy the requirements of Article III must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." (*Lujan*, 504 U.S. at 560.)  Plaintiffs seeking prospective relief based on anticipated harms, as here, must allege a threat of injury that is "real and immediate" (*Lyons*, 461 U.S. at 102), "*certainly impending*." (*Clapper*, 568 U.S. at 409 (original italics).)  When the alleged injury will occur "at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control," the Supreme Court has "insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." (*Lujan*, 504 U.S. at 564 n. 2.)

For anticipatory claims brought against policies that have yet to be enforced, "plaintiff is required to show that he is seriously interested in subjecting himself to,

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

and the defendant seriously intent on enforcing, the challenged measure." (*NAACP v. City of Richmond*, 743 F.2d 1346, 1351 (9th Cir. 1984) (finding the NAACP had standing to challenge a waiver provision in city's parade permit ordinance where plaintiffs had applied for a waiver and the City Council displayed an intent to use its discretion); *see also Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1019 (9th Cir. 2009) (finding standing to challenge city's special event permit ordinance where plaintiffs had applied to the City Manager for permission to hold their event, which permission was granted and for which the city assessed service charges and sued in state court for payment).

Plaintiffs cannot avoid these constitutional requirements for standing with conclusory allegations of a law's "chilling effect." (*Clapper*, 568 U.S. at 417-19.) In *Clapper*, the Court found that plaintiffs' alleged fears of anticipated Government surveillance were too speculative to establish an imminent injury (*Id.* at 410-14), and, for the same reason, it rejected plaintiffs' alternative theory of standing stated in terms of *present* injuries (costly measures taken to avoid the feared surveillance):

> Respondents contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending.  In other words, [they] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not . . . impending.

(*Id.* at 416.)  Allowing plaintiffs to proceed with an action "based on costs [] incurred in response to a speculative threat would be tantamount to accepting a repackaged version of [their] first failed theory of standing." (*Id.*)  While a "chilling effect" on speech, can, in some cases, constitute a cognizable injury, the Court distinguished those cases from one based on "a plaintiff's fear of future injury that itself [i]s too speculative to confer standing." (*Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015) (discussing *Clapper*).)  In short, "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

threat of specific future harm." (*Clapper*, 568 U.S. at 418 (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *see also Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1407 (9th Cir. 1991).)

The Seiders' did not apply for a CDP (Compl. ¶ 36) allegedly because the indemnification in the City's Uniform Application exposes them to "uncertain and potentially substantial future liability" (Compl. ¶¶ 65, 69).  Such harm is neither concrete nor imminent.  First, assuming the Seiders were interested in applying for a CDP back in June (Compl. ¶¶ 30-37), they have no serious interest in submitting an application now (*see* Compl. ¶ 39 (alleging that Dennis Seider was "unwilling to agree to the indemnification clause" *and* believed that applying for a permit would be "futile" as reasons for declining the Planning Director's invitations to apply for a CDP)).  Second, the Complaint is devoid of any allegation that the City is "seriously intent on enforcing" the clause in any context other than in a defense of *the City's* approval of a permit. (*See NAACP*, 743 F.2d at 1351.)  The Seiders' thus do not, and cannot, allege a future injury (liability) that is certainly impending.

In California, contractual defense and indemnity obligations attach upon the indemnitee's request for defense against a covered action or upon a finding of liability against the indemnitee. (*See* Cal. Civ. Code § 2778(1)-(4).)  In other words, the City needs to enforce the clause for liability to attach.  And the City will enforce the clause to defend its approval of the Seiders' CDP application. (Compl. ¶ 63.)  Because the Commission exercises jurisdiction over the Seiders' proposed signs, whether original or appellate (*see* LIP § 13.10.2(B)(2); LIP § 13.20), in this case, any approval or denial would issue from the Commission, and any legal challenge would be directed accordingly. (*Compare* CPRC § 30801 (creating "a right to judicial review of any decision or action of the commission") *with* CPRC § 30802 (creating a right to judicial review of a "decision or action of a local government . . . which decision or action may not be appealed to the commission").)  Under the Coastal Act, the City would not be a proper defendant in such litigation (*see* CPRC

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

§ 30802), and no indemnity obligation would be triggered.  Thus, the Seiders' claimed threat of injury is not only speculative, but contrary to law.

Insofar as the Seiders are claiming a present injury—*see, e.g.*, Compl. 64 ("[t]he potential for substantial liability chills Plaintiffs' free speech rights")—bare allegations of a subjective chilling effect, based on a future injury that is itself too speculative to confer standing, fail to cure the underlying deficiency. (*See Clapper*, 568 U.S. at 416.)

### C. Plaintiffs' Third and Fourth Claims are not Ripe for Judicial Review

"The ripeness doctrine seeks to identify those matters that are premature for judicial review because the injury at issue is speculative, or may never occur." (*Bowen*, 752 F.3d at 838.)  To assess a pre-enforcement challenge to regulation, the Ninth Circuit considers three factors: (1) whether plaintiffs have alleged "a concrete plan to violate the law" or to engage in protected conduct; (2) in First Amendment cases, whether plaintiff has "demonstrate[d] that a threat of potential enforcement will cause him to self-censor, and not follow through with his concrete plan"; and (3) "the history of past prosecution or enforcement under the statute." (*Id.* at 839.)

On balance, a pre-enforcement action is ripe for judicial review only if "the alleged injury is 'reasonable' and 'imminent,' and not merely 'theoretically possible.'" (*Id.*)  As in the standing analysis, "a general intent to engage in protected conduct at some unknown date in the future," coupled with "a speculative fear" of injury fails to state a claim that is ripe for review. (*Id.* at 840; *see also Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).)

The Seiders do not allege any concrete plans to apply for a CDP, the claimed speech right infringed by the indemnification clause (*see* Compl. ¶ 63).  Indeed, they apparently abandoned any such plans before filing the Complaint. (*See* Compl. ¶ 39.)  The Seiders also do not, and cannot, allege any potential enforcement of the clause for a Commission-approved CDP, nor can they point to any history of the City's past enforcement in this context.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

To test their claim that the clause would apply at all here, or their claim that it applies to permit denials (Compl. ¶¶ 63, 70), the Seiders could simply submit an application.  As they are confident that the City would decide and deny their CDP (*see* Compl. ¶ 39 (alleging futility)), when denied the Seiders could bring this very action challenging the denial.  If the City were then, for the first time, to demand that a permit applicant provide for the City's defense against the applicant's own lawsuit, the Seiders could also bring their claims against the indemnification clause—without speculating as to its scope.  Rather, the Seiders have brought a suit challenging the clause as construed to most likely violate some conceivable right with all the improvidence of litigants with no stake in the matter.  Such "hypothetical plans and fears do not create an immediate threat of self-censorship" sufficient for federal jurisdiction. (*Bowen*, 752 F.3d at 840.)

**D. Plaintiffs Lack Standing to bring their Fifth Claim of Relief**

In general, "a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit." (*Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) (citing "long line of cases").)  "Requiring a party to have actually confronted the policy he now challenges in court," by making a concrete request, "establishes the existence of a well-defined controversy between the parties." (*Id.* at 1221.)  "When, as here, the defendant is an institution, a formal application . . . assures that those in charge are aware of the problem and have a fair opportunity to resolve it." (*Id.*.)

The Seiders' fifth cause of action alleges no exception to this standard for standing to challenge local laws.  Indeed it does not even purport to allege a constitutional violation.  Rather, the Seiders baldly ask this Court to declare that Section 3.15.3(X) of the LIP does not prohibit their proposed sign (Prayer ¶ 1) and that "Malibu's denials," based on the City's interpretation of this section, are ultra vires and void "under California law" (Compl. ¶ 75).  As the Seiders have not applied for a CDP (Compl. ¶ 36), the "denial" at issue is the Planning Director's

Best Best & Krieger LLP
Attorneys at Law
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, California 90266

emailed replies to the Seiders' request for information (Compl. ¶ 33).

The City has a process for reviewing CDP applications, which the Seiders elected not to pursue.  Had they applied, their application would have been subject to the Commission's original permitting jurisdiction under LIP § 13.10.2(B)(2).  Were the Planning Director to determine that the Seiders' proposed sign would not "lessen or negate the purpose of" a Commission-issued CDP, and thus could be reviewed by the City, their application would have been decided by the City Planning Commission after a duly noticed public hearing (LIP §§ 13.7(B), 13.11(A), 13.12.1). Neither course of action occurred and the Seiders' cannot allege any City "action" or "denial" sufficient for standing to challenge the same.  They also do not, and cannot, allege any injury from the Planning Director's honest efforts to alert them to *Commission* policy relevant to *their request for information.*

To the extent that the Seiders argue futility, futility does not establish standing where it does not otherwise exist. (*Madsen*, 976 F.2d at 1222.)  And to the extent that applying for a CDP from the City would be futile, such futility would be a direct result of the policy set forth in the LIP prepared and certified by the Commission.  In any case, attacking City staff efforts to help does not allege a well-defined controversy between the parties sufficient for standing. (*Id.* at 1221.)

**E. Supplemental Jurisdiction is Not Warranted**

This Court should also decline to exercise supplemental jurisdiction over Plaintiffs' fifth claim for relief because it raises "a novel or complex issue of State law" relating to a right of action against local implementation of a certified LCP. (28 U.S.C. § 1367(c)(1).)

The Seiders' alleged state law cause of action is a petition for administrative mandamus under section 1094.5 of the California Code of Civil Procedure. (*See* Compl. ¶ 73 (citing *City & Cty. of San Francisco v. Bd. of Permit Appeals*, 207 Cal. App. 3d 1099, 1105 (1989) (reviewing board's exercise of power on appeal from city's § 1094.5 petition for administrative mandate).)  Section 1094.5 establishes a

Best Best & Krieger LLP
Attorneys at Law
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, California 90266

writ proceeding by which petitioners may challenge a local agency's (including a city's) "<u>final</u> administrative order or decision made as the result of a proceeding in which by law a hearing is required . . . " (Cal. Code Civ. Proc. § 1094.5(a) (underscore added).)  The court in such an action may order the agency to set aside its decision or deny the writ, "but the judgment shall not limit or control in any way the discretion legally vested in the respondent." (Cal. Code Civ. Proc. § 1094.5(f).)

Application of this section is limited by section 30802 of the Coastal Act, which grants any person aggrieved by a local government action implementing a certified LCP "a right to judicial review . . . by filing a petition for writ of mandate in accordance with the provisions of Section 1094.5 . . . ," *provided that* the local action "may not be appealed to the commission." (CPRC § 30802.)  A permit application decided by the Commission (originally or on appeal) would be a "decision or action of the commission," subject to judicial review, by writ petition, under section 30801 of the Act. (*See* CPRC § 30801.)

Therefore, whether *any* City "action" on the Seiders' as yet hypothetical permit application could be reviewed by a writ proceeding under section 1094.5 presents a complex issue of state law.  To the extent that it could, the Seiders have failed to satisfy even the basic requirements for a writ under the statute (they have not obtained a "final" local decision, and their requested relief—that this Court declare that the LIP does not prohibit their sign (Prayer ¶ 1)—exceeds the scope of any permitted relief under state law).

This Court should also decline to exercise supplemental jurisdiction over the Seiders' state law claim if it has dismissed all claims over which it has original jurisdiction. (28 U.S.C. § 1367(c)(3).)

## IV. Rule 12(b)(6): PLAINTIFFS FAIL TO STATE A CLAIM UNDER 42 U.S.C. § 1983 UPON WHICH RELIEF CAN BE GRANTED

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Best Best & Krieger LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

(*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)  In its analysis, a court need not accept as true legal conclusions, which "are not entitled to the assumption of truth" (*Id.* at 678-79), or "allegations that contradict matters properly subject to judicial notice." (*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).)

To state a claim under 42 U.S.C. § 1983, plaintiffs must allege (1) a constitutional violation, and (2) municipal responsibility [or liability] for that violation. (*Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120-22 (1992).)

### A. Plaintiffs' First and Second Claims Fail to State a Claim of Municipal Liability under 42 U.S.C. § 1983

Plaintiffs establish municipal liability under § 1983 in one of three ways: (1) by showing city staff committed the alleged constitutional violation pursuant to a city policy or custom; (2) by showing that a city official with "final policy-making authority" committed the alleged violation; or (3) by showing that a city official with final policy-making authority "ratified" a subordinate's unconstitutional action. (*Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir.1992).)  In short, a municipality may be held liable under § 1983 "only for its own violations of federal law." (*Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 36 (2010) (discussing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).)

A policy is a municipality's "own" for purposes of § 1983 liability if it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (*Monell*, 436 U.S. at 690.)  Plaintiffs bear the burden of showing that "their injury was caused by a *municipal* policy or custom." (*Humphries*, 562 U.S. at 30-31 (italics added).)

The Seiders' first two causes of action attack provisions of the LIP based on theory that the City "retains" these policies. (Compl. ¶¶ 44, 53.)  As discussed, any and all policies codified in the Malibu LIP were drafted, adopted, and certified by the Commission.  And the Seiders do not, and cannot, allege any facts to show that the Malibu City Council adopted any policy statement, ordinance, regulation, or

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

decision that stands in the way of their CDP.  Conclusory allegations that the City "retains policies" fail to state a plausible claim to relief, and insofar as they contradict state law or the LIP properly subject to judicial notice, this Court need not accept the allegations as true. (*Sprewell*, 266 F.3d at 988.)

### B. Plaintiffs' Third Claim Fails to Allege a Plausible Violation of the Unconstitutional Conditions Doctrine

The unconstitutional conditions doctrine prohibits the government from acting indirectly, through conditions on government benefits (e.g., grant funding, tax exemptions, public employment), to demand the forfeiture of constitutional rights—"a result which it could not command directly." (*Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (internal quotation marks omitted); *see also Agency for Intern. Development v. Alliance for Open Society Intern., Inc.*, 570 U.S. 205, 213 (2013) ("Were it enacted as a direct regulation of speech, the Policy Requirement would plainly violate the First Amendment.  The question is whether the Government may nonetheless impose that requirement as a condition on the receipt of federal funds.").)  Indeed "a funding condition cannot be unconstitutional if it could be constitutionally imposed directly." (*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 59-60 (2006).)

In contrast, the Supreme Court has held that the government may regulate the orderly exercise of First Amendment speech rights by means of a permit (which permit would include conditions). (*Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).)  To be sure, such a permitting scheme would be subject to the requirements of content-neutral time, place, and manner regulations, and a permit condition may be challenged for alleged violations of these requirements (*Id.*)  But a regulatory condition on the exercise of speech is distinct from an unconstitutional condition on a public benefit within the meaning of the doctrine. The latter cannot be imposed directly on speech rights, whereas the former *is* imposed directly on speech rights, as a regulation thereof, subject to constitutional

B EST B EST & K RIEGER LLP
A TTORNEYS AT L AW
1230 R OSECRANS A VENUE, S UITE 110
M ANHATTAN B EACH, C ALIFORNIA 90266

limitations. (*See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984) ("reasonable time, place, or manner regulations normally have the purpose and direct effect of limiting expression but are nevertheless valid").)

The Seiders' third cause of action thus fails to allege a constitutional violation sufficient for a claim under § 1983. (*Collins*, 503 U.S. at 120-22.)  It does not, and cannot, allege that (1) the City has conditioned a government benefit, (2) which condition would be unconstitutional if imposed directly on their First Amendment rights.  The indemnification clause is part of a permit application used in the City's, and incidentally the Commission's, direct regulation of varied land uses in Malibu, including the posting of signs.  Insofar as the Seiders are claiming that this *regulatory* condition is unconstitutional, the claim is indistinguishable from their fourth cause of action and suffers from all of that claim's deficiencies.

## C. Plaintiffs' Fourth Claim Fails to State a Plausible Claim of Overbreadth and Fails to Allege Facts to Support an As-Applied Challenge

The Seiders acknowledge that City's indemnity clause is content neutral (Compl. ¶ 68).  Their claim is that it is not tailored to the City's interest in protecting the public fisc (Compl. ¶ 69), indeed that it is overbroad (Compl. ¶ 70).

A challenge to local policy on grounds of overbreadth is a challenge to the constitutionality of the law or regulation "on its face." (*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984).)  In general, facial challenges are disfavored because the claims "often rest on speculation" and risk "premature interpretation of statutes on the basis of factually barebones records." (*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).)  They also run contrary to principles of judicial restraint by requiring courts to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." (*Id.*)  Accordingly, when evaluating a facial challenge, federal courts "must consider the municipality's authoritative constructions of the ordinance, including its own implementation and

Best Best & Krieger LLP
Attorneys at Law
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, California 90266

interpretation of it." (*Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1199 (9th Cir. 2016) (quoting *Forsyth*, 505 U.S. at 131).)

There are two ways in which a law may be invalid "on its face": (1) it is "unconstitutional in every conceivable application" (*Lone Star*, 827 F.3d at 1197), i.e. "no set of circumstances exists under which the [law] would be valid" (*Washington State Grange*, 552 U.S. at 449); or (2) it sweeps too broadly, "penalizing a substantial amount of speech that is constitutionally protected" (*Forsyth*, 505 U.S. at 130).  In the latter case the law is unconstitutionally "overbroad." (*See generally Vincent*, 466 U.S. at 796-802.)

To avoid the deterrent effect of sweeping government restrictions on speech, the Supreme Court has recognized a facial challenge against overbroad laws, even when they may be valid as applied in the case at bar. (*Id.* at 798.)  The overbreadth doctrine thus creates an exception to the general rule against third-party standing in federal courts (i.e., that individuals may not the challenge the legality of a law as applied to third parties not before the court). (*Id.*)  The interest in preventing a chill on the expressive activities of large numbers of people justifies the exception, and the Court has limited its application to cases that advance this justification. (*Id.* at 800-01 n. 19 ("We have never held that a statute should be held invalid on its face merely because it is possible to conceive of a single impermissible application").)

To this end, a law's alleged overbreadth must be both "real" and "substantial"—"there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." (*Id.*)  Absent allegations that a law's impact on third-party interests in free speech *differs* from its impact on the interests of the parties before the court, a facial challenge based on overbreadth does not lie. (*Id.* at 801-02.)

The Seiders have not alleged that the City's indemnification clause impacts third party speech rights any differently from the way that it allegedly impacts their own. The claimed overbreadth is based on *their* purported potential liability for the

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

City's defense against "their own suit" (Compl. ¶ 70), which is also grounds for their claim that the clause is unconstitutional "as applied to them" (Compl. ¶ 63).

Alternatively, the Seiders do not, and cannot, allege that the indemnity clause is unconstitutional in every conceivable application.  That is, they cannot allege that requiring indemnification as a condition for a sign permit is *per se* invalid.  First, the City enforces the clause only for permits *approved* by the *City* (*see* Malibu Municipal Code § 17.68.070(R)), and this construction of the clause is entitled to deference. (*Lone Star*, 827 F.3d at 1199.)  Second, the Ninth Circuit has determined that "[t]here is no authority for holding such neutral, commonsense protections against municipal liability unconstitutional." (*Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1057 (9th Cir. 2006) (Kleinfeld, J., concurring, writing for the majority).)  The Circuit's decision "directly precludes" the Seiders' facial challenge. (*See Bowen*, 752 F.3d at 831.)

Finally, the Seiders do not allege any facts to support their as-applied claim. In California, a standard agreement to indemnify includes the cost of defense: the indemnitor is required, on the indemnitee's request, "to defend actions or proceedings brought against the latter [with] respect to the matters embraced by the indemnity." (Cal. Civ. Code § 2778(4).)  Municipalities across the state require applicants for a CDP to provide such indemnification as a matter of public policy, finding that litigation costs incurred to defend an individual permit should be borne by the permit holder and not general taxpayers. (*See* 85 Ops. Cal. Atty. Gen. 21 (2002).)  The Seiders acknowledge this public interest, and they contend that City's clause is not narrowly tailored because it subjects them to an "unknown amount of liability." (Compl. ¶ 69.)  Indeed it could be no liability, but the mere "possibilities" inherent in the defense requirement part and parcel of indemnity agreements "do not undermine [the requirement's] constitutionality." (*Food Not Bombs*, 450 F.3d at 1056; *see also Kaahumanu v. Hawaii*, 682 F.3d 789, 809 (9th Cir. 2012) (upholding indemnification clause in permits to conduct weddings on the beach, a First

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

1   Amendment activity, which required permittees to protect the state issuing agency

2   "from liability to third parties").)

3    The Seiders have alleged no facts to distinguish their claims against Malibu's

4   indemnification clause from those requirements upheld by the Ninth Circuit.  In

5   short, the Seiders contend that they should not be required to indemnify the City for

6   a sign CDP at all—they are attacking an established provision of municipal permits

7   on principle.  It is a theoretical challenge because in the Seiders' case the City will

8   not be approving or denying their permit, a precondition for invoking indemnity.

9   Under state law, any grievance for official action taken on their CDP application

10   must be directed to the Commission. (*See* CPRC §§ 30801, 30802.)

## V. Rule 12(b)(7) (ALTERNATIVE RELIEF): THE CALIFORNIA COASTAL COMMISSION MUST BE JOINED AS A REQUIRED PARTY

13    If this Court finds that the Seiders' first two causes of action, attacking the

14   LIP, should proceed, it must order the joinder of the Commission pursuant to Rule

15   19 of the Federal Rules of Civil Procedure. (Fed.R.Civ.P. 19(a)(2).)

16    "Rule 19(a) is concerned with consummate rather than partial or hollow

17   relief as to those already parties, and with precluding multiple lawsuits on the same

18   cause of action." (*E.E.O.C. v. Peabody W. Coal Co*., 400 F.3d 774, 780 (9th Cir.

19   2005).)  In actions seeking prospective relief, joinder binds a required party under

20   Rule 19(a)(1) by res judicata to enable complete relief. (*Id.* (finding that joinder will

21   "preclude the [party] from bringing a collateral challenge to the judgment").)

22    The Commission is a required party to this action because it exercises

23   jurisdiction over the Seiders' CDP.  And just as the Seiders' first two causes of

24   action, when directed against the City, lack redressability, this Court cannot accord

25   complete relief among existing parties absent the Commission because (1) the City

26   cannot effectively amend the LIP absent Commission certification; and (2) the

27   Commission has grounds to deny the Seiders' permit even if the challenged

28   provisions of the LIP are declared unenforceable. (Fed.R.Civ.P. 19(a)(1)(A).)

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

1    The Commission also has an interest in enforcing the Seiders' existing CDP,

2  including permit conditions that may implement state public access requirements in

3  the coastal zone.  As the City is not the State's representative in this matter, these

4  interests would not be protected absent joinder. (Fed.R.Civ.P. 19(a)(1)(B)(i).)

5    Finally, absent Commission certification of an LIP amendment, the City

6  would be subject to a substantial risk of incurring inconsistent obligations were this

7  Court to rule in favor of the Seiders. (Fed.R.Civ.P. 19(a)(1)(B)(ii).)  Any approval

8  of a CDP must be predicated on a finding that the proposed development conforms

9  with the certified LCP (*See* LIP § 13.9(A)).  While the City does not exercise final

10  permitting authority over the Seiders' proposed signs, in reviewing future

11  applications over which it does exercise authority, City officials would be faced

12  with the following choice: comply with this Court's judgment prohibiting the

13  challenged LIP provisions, or comply with state law and the LCP requiring them.

14  (See *E.E.O.C.*, 400 F.3d at 780 (describing "the proverbial rock and a hard place").)

15  Were the City to comply with this Court's judgment and approve a sign conflicting

16  with the LIP, the Commission could issue it a cease and desist order, which may be

17  imposed against "any person or governmental agency" (CPRC §§ 30809, 30810),

18  or file a writ petition to invalidate the City's action in state court (CPRC § 30802).

19    The City would be exposed to these legal risks even if the LIP is declared

20  unconstitutional because the Commission is not bound by this Court's judgment

21  unless it is made a party herein. (*Lujan*, 504 U.S. at 568-69.)  Indeed the

22  Commission would likely argue that it should not be bound because no party had

23  defended the LIP before this Court—as the City will not defend it.

24  Dated:  December 3, 2020                      Respectfully submitted,

26                                      By:*/s/ Christi Hogin*
                                         CHRISTI HOGIN
27                                        JOHN C. COTTI
                                         KATHY J. SHIN
28                                        BEST BEST & KRIEGER, LLP
                                         Attorneys for Defendant City of Malibu

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1250 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266

## **PROOF OF SERVICE**

I, Wendy Hoffman, declare:

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 1230 Rosecrans Avenue, Suite 110, Manhattan Beach, California  90266.

On December 3, 2020, I electronically filed the attached document:

> CITY OF MALIBU'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR JOINDER OF REQUIRED PARTY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

with the Clerk of the court using the CM/ECF system which will then send a notification of such filing to the following:

Jeremy Talcott
Pacific Legal Foundation
1212 W. Amerige Avenue
Fullerton, CA 92833-2709
Phone:  (916) 419-7111
Fax:      (916) 419-7747
Email:   jtalcott@pacificlegal.org

Christopher M. Kieser
930 G Street
Sacramento, CA 95814
Phone:  (916) 419-7111
Fax:      (916) 419-7747
Email:   ckieser@pacificlegal.org

Mark Miller
Pacific Legal Foundation
4440 PGA Boulevard, Suite 307
Palm Beach Gardens, FL 33410
Phone:  (561) 691-5000
Fax:      (916) 419-7747
Email:   mmiller@pacificlegal.org

Jamee Jordan Patterson
Department Of Justice
PO Box 85266
San Diego, CA 92186-5266
Phone: (619) 738-9329
Fax: (619) 645-2271
*Courtesy copy via U.S. Mail*

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 3, 2020, at Manhattan Beach, California.

*/s/ Wendy Hoffman*
_____

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266