JEREMY TALCOTT, No. 311490
Email: jtalcott@pacificlegal.org
Pacific Legal Foundation
1212 W. Amerige Ave.
Fullerton, California 92833-2709
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

CHRISTOPHER M. KIESER, No. 298486
Email: ckieser@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS SEIDER and LEAH SEIDER, as Trustees of the Seider Family Trust, | No. 2:20-cv-08781 PA (MRWx) |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |
| v. | Date:   February 8, 2021 |
| CITY OF MALIBU, | Time:  1:30 p.m. |
| Defendant. | Place: Courtroom 9A |
| | Judge: Hon. Percy Anderson |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **Table of Contents**

**Page**

Table of Authorities ...................................................................................... 3

Introduction ................................................................................................... 6

Factual Background ....................................................................................... 8

Standard of Review ..................................................................................... 10

Argument ..................................................................................................... 10

   I.   Malibu is the Proper Defendant in the LIP Challenges ................................. 10

      A.  Malibu has primary permitting authority—the Commission's
          jurisdiction over permits is appellate only ................................................. 10

      B.  Because Malibu has original jurisdiction, it—not the Commission—
          is the proper defendant in a suit challenging the LIP provisions ............... 13

          1.   Malibu's enforcement of the LIP caused the Seiders' injury ............. 14

          2.   The Seiders' injury is redressable through a favorable
               decision in this case ......................................................................... 16

      C.  The Commission is not a required party under Rule 19 ............................ 17

   II.  The Seiders Plausibly Allege That Malibu's Indemnification Clause
      Is Unconstitutional ...................................................................................... 20

      A.  The Seiders have standing to challenge the Indemnification Clause ......... 21

      B.  The Seiders' challenge to the indemnification clause is ripe ..................... 24

      C.  The Seiders state plausible claims that the indemnification
          clause is unconstitutional ....................................................................... 26

          1.   The Seiders have plausibly alleged that the indemnification
               clause as applied to them violates the First Amendment ................... 26

   III.  The Seiders Plausibly Allege a State Law Ultra Vires Claim ....................... 29

Conclusion ................................................................................................... 30

1

**Table of Authorities**

2

**Page**

3

**Cases**

4
*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.,*
570 U.S. 205 (2013) ................................................................... 21

5
*Ariz. Right to Life Political Action Comm. v. Bayless,*
6
320 F.3d 1002 (9th Cir. 2003) ............................................. 7, 24, 26

7
*AshBritt, Inc. v. Ghiilarducci,*
2020 WL 7388071 (N.D. Cal. Dec. 16, 2020) ................................. 29

8
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................... 10

9
*Bd. of Trs. as Trs. of Operating Eng'rs Local 501 Security Fund v.*
*Cty. of Orange,* No. 8:19-cv-02117-JLS-ADS,
10
2020 WL 4355502 (C.D. Cal. Apr. 6, 2020) ............................. 17–18

11
*Bell Atl. Corp. v. Twombly,*
12
550 U.S. 544 (2007) ................................................................... 10

13
*Bogan v. Scott-Harris,*
523 U.S. 44 (1998) ..................................................................... 14

14
*Broadrick v. Oklahoma,*
15
413 U.S. 601 (1973) ................................................................... 29

16
*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v.*
*California,* 547 F.3d 962 (9th Cir. 2008) ..................................... 19

17
*City of Ladue v. Gilleo,*
18
512 U.S. 43 (1994) ..................................................................... 26

19
*City of Malibu v. Cal. Coastal Comm'n,*
121 Cal. App. 4th 989 (2004) ...................................................... 11

20
*City of Malibu v. Cal. Coastal Comm'n,*
206 Cal. App. 4th 549 (2012) ................................................. 6, 11

21
*Clapper v. Amnesty Int'l USA,*
22
568 U.S. 398 (2013) ............................................................. 22–23

23
*Delgado v. Plaza Las Americas, Inc.,*
139 F.3d 1 (1st Cir. 1998) .......................................................... 19

24
*Dragovich v. U.S. Dep't of the Treasury,*
25
764 F. Supp. 2d 1178 (N.D. Cal. 2011) ......................................... 29

26
*Ex parte Young,*
209 U.S. 123 (1908) ................................................................... 14

27
*Fanning v. Grp. Health Co-op.,* No. C-07-1716MJP,
28
2008 WL 2148753 (W.D. Wash. May 21, 2008) ............................. 18

*Gilstrap v. United Air Lines, Inc.*,
    709 F.3d 995 (9th Cir. 2013) ............................................................... 10

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ................................................................... 14–15

*iMatter Utah v. Njord*, 980 F. Supp. 2d 1356 (D. Utah 2013),
    *aff'd*, 774 F.3d 1258 (10th Cir. 2014) ...................................... 7, 27–29

*Index Newspapers LLC v. United States Marshals Serv.*,
    977 F.3d 817 (9th Cir. 2020) ........................................................ 21–22

*Kaahumanu v. Hawaii*,
    682 F.3d 789 (9th Cir. 2012) ................................................................ 27

*Levine v. Vilsack*,
    587 F.3d 986 (9th Cir. 2009) ................................................................ 10

*Long Beach Area Peace Network v. City of Long Beach*,
    574 F.3d 1011 (9th Cir. 2009) ...................................................... 7, 27–28

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................... 13, 15

*Madsen v. Boise State University*,
    976 F.2d 1219 (9th Cir. 1992) .............................................................. 29

*Makah Indian Tribe v. Verity*,
    910 F.2d 555 (9th Cir. 1990) ............................................................... 18

*Mountainlands Conservancy, LLC v. Cal. Coastal Comm'n*,
    47 Cal. App. 5th 214 (2020) ................................................................ 14

*Nunez by Nunez v. City of San Diego*,
    114 F.3d 935 (9th Cir. 1997) .......................................................... 28–29

*Paiute-Shoshone Indians of Bishop Cmty. v. City of Los Angeles*,
    637 F.3d 993 (9th Cir. 2011) ............................................................... 10

*Perry v. Schwarzenegger*,
    704 F. Supp. 2d 921 (N.D. Cal. 2010) ................................................... 15

*Protectmarriage.com-Yes on 8 v. Bowen*,
    752 F.3d 827 (9th Cir. 2014) .......................................................... 24–25

*Riverside Cty. Sheriffs' Dep't v. Stiglitz*, 147 Cal. Rptr. 3d 292 (2012),
    *aff'd on other grounds by* 60 Cal. 4th 624 (2014) ................................... 30

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ........................................................................... 21

*Santa Monica Food Not Bombs v. City of Santa Monica*,
    450 F.3d 1022 (9th Cir. 2006) ........................................................ 27–28

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012) .......................................................... 12-13

*Taniguchi* and *Desert Outdoor Advertising, Inc. v.
City of Moreno Valley*, 103 F.3d 814 (9th Cir. 1996) ...................................29

*Taniguchi v. Schultz,*
303 F.3d 950 (9th Cir. 2002) ................................................................29

*Texas v. United States,*
523 U.S. 296 (1998) ...........................................................................15

*Thomas v. Anchorage Equal Rights Comm'n,*
220 F.3d 1134 (9th Cir. 2000) .............................................................15

*Thomas v. Union Carbide Agric. Prods. Co.,*
473 U.S. 568 (1985) ...........................................................................15

*Wolfson v. Brammer,*
616 F.3d 1045 (9th Cir. 2010) .......................................................24–25

*Yost v. Thomas,*
685 P.2d 1152 (Cal. 1984) ..................................................................14

**Statutes**

Cal. Pub. Res. Code § 30108.6 ................................................................16

§ 30600(d) ..................................................................................6, 11

§ 30603 .........................................................................................23

§ 30802 .....................................................................................19–20

§ 30810(a)(2) ...................................................................................19

§ 30810(b) ......................................................................................19

§§ 30809-30810 ................................................................................19

Malibu Municipal Code § 17.68.070(R) ......................................................23

**Rules**

Fed. R. Civ. P. 19(a) .......................................................................17–18

19(b) .........................................................................................18

**Other Authorities**

LIP § 13.10.2(B) ...................................................................................6

Nichol, Jr., Gene R., *Ripeness and the Constitution,*
54 U. Chi. L. Rev. 153 (1987) .............................................................16

1
**Introduction**

2     Dennis and Leah Seider want to put up a sign on their own property that

3 accurately describes the boundary of their private property. Specifically, they want

4 to demarcate the boundary between their unencumbered beach property and a public

5 easement that exists along the shoreline. The Seiders need a sign to discourage

6 trespassing on their private property and direct the public to the easement and nearby

7 public beaches. Absent a sign, members of the public routinely treat the Seiders'

8 unencumbered private beach as public property. A sign is therefore necessary for the

9 Seiders to protect their private property rights.

10     Malibu does not contest the merits of the Seiders' principal claim that four

11 provisions of the City's Local Implementation Plan (LIP)—including one prohibiting

12 "[s]igns which restrict public access to State tidelands, public vertical or lateral

13 access easement areas, or which purport to identify the boundary between State

14 tidelands, and private property"—violate the First Amendment. Instead it argues that

15 the Seiders' true adversary is the California Coastal Commission, which certified

16 Malibu's Local Coastal Program (LCP), including the LIP. While history

17 demonstrates that Malibu opposed the drafting and certification of the LCP, that does

18 not change the fact that "[e]xcept for limited rights of appeal to the Coastal

19 Commission, a coastal development permit must be obtained from the local

20 government after the Coastal Commission has certified a local coastal program." *City*

21 *of Malibu v. Cal. Coastal Comm'n*, 206 Cal. App. 4th 549, 555 (2012) (citing Cal.

22 Pub. Res. Code § 30600(d)). Malibu has plainly indicated that it will deny the

23 requested permit as inconsistent with one of the LIP provisions challenged here. The

24 Seiders do not challenge any Coastal Commission action—nor do they propose to

25 take any action that would "lessen or negate the purpose of any specific permit

26 condition," LIP § 13.10.2(B), which is the only instance where Commission approval

27 of their sign would be required in the first instance. Indeed, the Seiders would lack

28 standing to sue the individual Commissioners, since the only action the Commission

has taken is the LCP certification almost 20 years ago and any future action by the Commission is purely speculative. Not only is Malibu the proper defendant in this action, but the Coastal Commission and the Commissioners are *improper* defendants.

The Seiders also challenge the indemnification provision of Malibu's CDP application, which is a broadly worded clause requiring permit applicants to agree to indemnify Malibu "against all liability and costs relating to the City's actions concerning [their] project." The Seiders concede that Malibu can likely enforce such a provision in a wide variety of CDP applications that do not involve speech. But where a sign permit is involved, even a content-neutral indemnification clause must be "narrowly tailored to serve a substantial governmental interest." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1039 (9th Cir. 2009). Malibu may have a significant interest in protecting itself from financial liability in the form of third-party challenges to its permit decisions, but it does not follow that Malibu may pass along any and all costs associated with defending a sign permit application to the speaker without running afoul of the First Amendment. *See id.* at 1039–41; *see also iMatter Utah v. Njord*, 980 F. Supp. 2d 1356, 1381 (D. Utah 2013), *aff'd*, 774 F.3d 1258 (10th Cir. 2014). Rather, the prospect of indemnifying Malibu for litigation costs over which the Seiders have no control has chilled the exercise of the Seiders' speech rights—to the point that they decided not to seek a permit at all. It likewise "may dissuade a large number of potential speakers from exercising their rights." *iMatter*, 980 F. Supp. 2d at 1381. And because of the chilling effect of restrictions on speech, the Seiders need not wait to determine the extent of the liability before challenging the provision. *See Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). The challenge is ripe now and the Seiders have standing.

For the reasons stated herein, this Court should deny the motion to dismiss and Malibu's alternative request to join the Coastal Commission or the Commissioners as required parties under Rule 19.

1

**Factual Background**

2      Dennis and Leah Seider are trustees of the Seider Family Trust, which owns

3 the property at 26642 Latigo Shore Drive in Malibu. Complaint ¶ 11. In 1976, the

4 Seiders' predecessor in interest received a permit from the South Coast Regional

5 Commission—a predecessor to the Coastal Commission—to build a single-family

6 home on the property, on the condition that he record a deed restriction granting

7 lateral public access to his beach property up to 25 feet inland of the mean high tide

8 line. *Id.* ¶ 23. Although the Seiders once contested the validity of the deed restriction,

9 they now accept that an easement exists. *Id.* ¶ 24.

10      In 2018, a sign reading PRIVATE BEACH was positioned on the crossbeams

11 below the Seiders' home. *Id.* ¶ 25. Similar signs had existed before with no

12 interference from Malibu or the Coastal Commission. But on April 29, 2020, the

13 Commission sent the Seiders an enforcement letter, stating that the sign was

14 unpermitted development, contrary to the 1976 deed restriction, and violated Section

15 3.15.3(X) of Malibu's LIP. *Id.* ¶ 26. The Commission ordered the Seiders to remove

16 the sign or face significant enforcement penalties. *Id.*

17      The Seiders obeyed the Commission's demand, but they still needed a sign. *Id.*

18 While Dennis is often happy to allow beachgoers to sit on his beach for an afternoon,

19 the absence of signage led to an influx of trespassers who assumed the entire beach

20 behind the Seiders' house is public. *Id.* ¶ 27. The COVID-19 pandemic exacerbated

21 the problem, as considerably more trespassers than usual came to sit on his private

22 property while the public beaches were closed. *Id.* ¶ 29. So Dennis decided to seek a

23 permit for a sign that would accurately describe the boundary between the family's

24 unencumbered property and the lateral access easement. *Id.* ¶ 27. He emailed Malibu

25 Planning Director Bonnie Blue and proposed a sign that would identify said boundary

26 as accurately as possible: "PRIVATE PROPERTY FROM THIS SIGN __ FEET

27 SEAWARD AFTER WHICH THE PUBLIC HAS A LATERAL ACCESS ALONG

28 THE SHORE." *Id.* ¶ 30. But Blue responded that such a sign would be prohibited by

LIP Section 3.15.3(X), which prohibits "[s]igns which restrict public access to State tidelands, public vertical or lateral access easement areas, or which purport to identify the boundary between State tidelands, and private property." *Id.* ¶¶ 30–31. Although Dennis protested that the sign only identified the boundary between his unencumbered property and the public easement, Blue continued to state that the sign would violate the LIP. *Id.* ¶¶ 31, 38. Blue invited Dennis to apply for a permit anyway, but consistently stated that it would be denied. *Id.* ¶¶ 31, 38–39.

Dennis wanted—and still wants—to apply for a sign permit. But he soon learned that submitting a permit application would require him to agree to indemnify Malibu "against all liability and costs relating to the City's actions concerning this project." *Id.* ¶¶ 22, 33, 35–36. Concerned with the significant potential liability he and Leah might face should the sign spark litigation, Dennis decided not to apply. *Id.* ¶¶ 35–36. Absent the indemnification clause, Dennis would have applied for a permit despite Blue's assurances that it was futile. *Id.* ¶ 33. It was only the second obstacle of the indemnification clause that drove Dennis not to make the futile application for a permit and instead file this lawsuit. *Id.* ¶ 36.

After Dennis' last-ditch attempt to get a sign approved in early September, he and Leah brought this action seeking declaratory and injunctive relief. In short, the Seiders allege that (1) the prohibition in LIP Section 3.15.3(X) is a content-based speech restriction that fails strict scrutiny; (2) three of the eleven factors the Planning Director must evaluate before granting a sign permit under LIP Section 3.15.4(C) amount to unconstitutional prior restraints on speech; and (3) the indemnification clause violates the First Amendment and unconstitutionally conditions their right to speak on an agreement to assume untold future liability. *Id.* ¶¶ 42–71 (first through fourth causes of action). In the alternative, the Seiders also brought an ultra vires claim under California law, on the theory that if Malibu misconstrued its own LIP, it took action contrary to its own governing laws. *Id.* ¶¶ 73–75.

Malibu moved to dismiss the entire complaint and, in the alternative, order

joinder of the Coastal Commission with respect to the challenges to the LIP provisions. Doc. 13.

## Standard of Review

On a motion to dismiss, whether for lack of standing, failure to state a claim, or failure to join a required party, this Court must assume the truth of the Seiders' well-pleaded factual allegations and draw any reasonable inferences in their favor. *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009) (standing); *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1003 (9th Cir. 2013) (failure to state a claim); *Paiute-Shoshone Indians of Bishop Cmty. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011) (required party). Specifically, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## Argument

### I.     Malibu is the Proper Defendant in the LIP Challenges

With respect to the first and second causes of action, Malibu's arguments boil down to one major point—that the Seiders' true adversary is the Coastal Commission, not the City. Malibu says that the Seiders lack standing because a judgment invalidating the LIP provisions as applied to them would not bind the Commission, and relatedly that the Seiders would have to seek a permit from the Commission itself. On the merits, Malibu makes a similar argument, namely that the LIP provisions are not Malibu policies because they were drafted and forced upon Malibu by the Commission. None of this renders the Commission or the Commissioners the proper defendants.

### A.     Malibu has primary permitting authority—the Commission's jurisdiction over permits is appellate only

Malibu's history with the Coastal Commission is indeed fraught with conflict. Although the Coastal Act requires local jurisdictions within the coastal zone to

prepare an LCP, Malibu did not produce one for nine years after it was incorporated in 1991. *City of Malibu v. Cal. Coastal Comm'n*, 121 Cal. App. 4th 989, 992 (2004). The Commission sought and obtained legislative relief directing the Commission to draft an LCP for Malibu, which it did in 2002. *Id.* Malibu contested the effectiveness of the Commission-drafted LCP and purported to place it on the ballot for a local referendum, but a California state court ordered Malibu to accept the LCP, begin processing permit applications, and set aside its decision to hold a referendum. *Id.* at 992–93. The California Court of Appeal affirmed that order. *Id.* at 999.

But that is now in the past. Malibu now has a certified LCP like any other. *See City of Malibu*, 206 Cal. App. 4th at 554 ("Malibu . . . has had a certified local coastal program since 2002."). That means it now has the primary responsibility for processing CDP applications; the Commission's jurisdiction is appellate only. As the California Court of Appeal put it, "[e]xcept for limited rights of appeal to the Coastal Commission, a coastal development permit must be obtained from the local government after the Coastal Commission has certified a local coastal program." *Id.* at 555 (citing Cal. Pub. Res. Code § 30600(d)). The history of Malibu's Commission-drafted LCP does not affect the current case. As far as the Seiders are concerned, Malibu decides whether or not they can put up their sign. Malibu cannot avoid its duty to enforce its LCP by simply passing the buck to the Commission.

Malibu nevertheless asserts that the Commission might have original jurisdiction in this particular case. Doc. 13 at 17 (hereinafter "MTD"). The City cites LIP Section 13.10.2(B), which states that property owners shall apply to the Commission for a CDP authorizing "[d]evelopment that would lessen or negate the purpose of any specific permit condition, any mitigation required by recorded documents, any recorded offer to dedicate or grant of easement or any restriction/limitation or other mitigation incorporated through the project description by the permittee, of a Commission-issued coastal permit." Malibu's problem here, however, is that the Seiders' proposed sign does not meet the criteria for direct

Commission application.[1] A sign truthfully stating the boundaries of the easement would not "lessen or negate the purpose" of the 1976 permit condition. On the contrary, the sign would simply demarcate the location of the public easement dedicated as a result of that condition. Complaint ¶¶ 1–2 (noting that the proposed sign "does nothing more than lawfully and properly demarcate the line between where the plaintiffs' property line on the beach ends and the public's right of access to the beach begins"). Tellingly, Malibu does not explain how a sign informing the public about the existence of the easement and the public access it provides could possibly "lessen or negate the purpose" of the easement.

Malibu cites the Commission's earlier enforcement letter as evidence that (1) the Seiders' proposed sign falls within Section 13.10.2(B) and (2) that the Commission already said it would deny a permit for the proposed sign. But the Commission's enforcement letter was in response to a *different sign*. MTD at 1, 11–12. That sign simply read "PRIVATE BEACH," and the Seiders removed it before the Commission could impose any penalties. Complaint ¶ 26. The Commission's judgment that the "PRIVATE BEACH" sign ran afoul of the 1976 permit condition does not apply to the Seiders' proposed sign at issue in this case. The proposed sign here is materially different in that it acknowledges the public easement; unlike the "PRIVATE BEACH" sign, the proposed sign is not subject to the interpretation that the public lacks access to the entire beach behind the Seiders' house—indeed, just the opposite. The proposed sign literally announces the terms of the public access easement. The allegations of the Complaint place the proposed sign outside the ambit of Section 13.10.2(B)'s limited preservation of the Commission's original jurisdiction. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012) (Courts must "accept all well-pleaded allegations of material fact as true and

---

[1] Even if it did, Malibu must make the decision to refer a matter to the Commission under this particular LIP section. *See* MTD at 17. Malibu gave no indication that this particular CDP was subject to the Commission's original jurisdiction.

1    construe them in the light most favorable to the nonmoving party.").

2          Perhaps that is why Malibu Planning Director Bonnie Blue never cited

3    potential Commission original jurisdiction in her correspondence with Dennis. She

4    simply said that Malibu would not grant the Seiders a permit for their proposed sign

5    because it would violate Section 3.15.3(X) of the LIP. Complaint ¶¶ 31, 38. Malibu

6    itself recognized that it had original jurisdiction over the Seiders' permit application.

7    Complaint ¶ 31. Section 13.10.2(B) is a narrow exception to the general rule that

8    Malibu has original jurisdiction over all permits within the city's boundaries.

9    Because it does not apply, Malibu cannot now avoid responsibility for enforcing the

10   LIP by attempting to hand original jurisdiction over to the Commission.

11          **B.    Because Malibu has original jurisdiction, it—not the Commission—**
12                  **is the proper defendant in a suit challenging the LIP provisions**

13          Malibu's primary argument seeking to dismiss the LIP claims is that the

14   Seiders lack standing because their disagreement is with the Commission, not the

15   City. But Malibu misunderstands the standing inquiry in several ways. At bottom,

16   the Seiders satisfy the requirements for standing—injury, causation, and

17   redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

18   Their injury is that they cannot receive a sign permit because of unconstitutional

19   provisions of the Malibu LIP. That injury is caused by Malibu's enforcement of its

20   LIP provisions—as evidenced by Malibu's planning director flatly stating that LIP

21   Section 3.15.3(X) precludes the grant of a permit. Injunctive and declaratory relief

22   would remedy the problem by enjoining the enforcement of the unconstitutional

23   provisions so the Seiders to apply for a permit without those provisions.[2]

24

25   ─────────────────
     [2] As they must, the Seiders recognize that Malibu is entitled to maintain a permitting
26   system for signs. That is why the Seiders do not ask this Court to order Malibu to
27   grant a permit, but only to have the unconstitutional requirements declared invalid as
     applied to them. This relief would enable the Seiders to apply for a permit free from
28   the unconstitutional provisions.

1.   **Malibu's enforcement of the LIP caused the Seiders' injury**

Malibu first insists that the Commission, not the City, has caused the Seiders' injury. For support, Malibu merely repeats the facts that the Commission drafted the City's LCP, the LCP cannot be amended without Commission certification, and state law requires the City to process permits. MTD at 11. This is all true. Nevertheless, the LIP consists of local ordinances enforced by the local government, and only the City can grant the permit that the Seiders seek. *See Mountainlands Conservancy, LLC v. Cal. Coastal Comm'n*, 47 Cal. App. 5th 214, 220 (2020) (referring to an LIP as "zoning ordinances, zoning maps and other implementing actions"). The Coastal Act leaves "wide discretion to a local government not only to determine the contents of its land use plans, but to choose how to implement these plans." *Yost v. Thomas*, 685 P.2d 1152, 1160 (Cal. 1984). Certification of an LCP does not transform a local government into an agency of the state. *See id.* at 1158 (rejecting this argument). Despite the Commission's heavy hand in drafting Malibu's LCP, Malibu, not the Commission, enforces it.

As the party responsible for enforcing the LCP—including the challenged provisions of the LIP—any injury arising from that enforcement is fairly traceable to Malibu. And because it enforces these provisions, it is also the proper party to be restrained from enforcing them. Perhaps nothing illustrates this principle better than the case law applying *Ex parte Young*, 209 U.S. 123 (1908). When a litigant seeks to restrain state action inconsistent with the federal constitution, he must sue the state official responsible for taking that action—regardless of who drafted it.[3] This is true even when the party responsible for enforcing the challenged law disagrees with the law and refuses to defend it. *See Hollingsworth v. Perry*, 570 U.S. 693, 702 (2013). Such an official is still the proper defendant because he or she enforces the challenged

---

[3] Indeed, the people who draft unconstitutional legislation are immune from suit for said drafting. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54–56 (1998) (legislators are immune to suit for their legislative acts).

law and is therefore responsible for the plaintiff's injury. *See id.* (describing the defendants as "various other state and local officials responsible for enforcing California's marriage laws"); *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 1004 (N.D. Cal. 2010) (granting relief "prohibiting the official defendants from applying or enforcing Proposition 8"). Malibu is in the same position as the unhappy enforcers in *Hollingsworth*—it doesn't seem to like the LIP provisions, but absent a court order or legislative change it must continue to enforce them. *See Hollingsworth*, 570 U.S. at 702 ("Those officials refused to defend the law, although they have continued to enforce it throughout this litigation.").

Perhaps more fundamentally, while the Seiders seek to restrain Malibu's enforcement of the challenged LIP provisions, they do not—and indeed *could not*— seek to restrain any Commission action at this point. Unlike Malibu's "actual" or "imminent" enforcement of the LIP provisions, any Commission action in connection with the proposed sign is speculative at best. *See Lujan*, 504 U.S. at 560. Indeed, it would "rest[] upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)) (internal quotation marks omitted). After all, there is no guarantee the Commission will *ever* take any action on Dennis and Leah's eventual permit application. Were Malibu to issue a permit, someone would have to appeal Malibu's decision to the Commission before that body could act.[4] So not only do the Seiders not seek to restrain any particular Commission action, they would lack standing to do so because any such claim would be unripe. *See id.*; *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) ("[I]n 'measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing.'"

---

[4] It is true that the Commission may appeal to itself. But that does not make the potential for an appeal any less speculative.

(quoting Gene R. Nichol, Jr., *Ripeness and the Constitution*, 54 U. Chi. L. Rev. 153, 172 (1987))).

Malibu's argument confuses responsibility for the policy's contents with the legal responsibility for enforcing the policy.[5] While Malibu may not bear responsibility for the contents of its LIP, it does have the legal responsibility to enforce the ordinances. In this way, Malibu stands in a similar position as an executive official tasked with implementing a law with which he or she disagrees. Despite Malibu's apparent disagreement with various provisions of the LIP, its enforcement of the challenged provisions still causes the Seiders' injury in this case.

## 2. The Seiders' injury is redressable through a favorable decision in this case

Relatedly, Malibu argues that a favorable decision here will not help the Seiders because (1) the Commission must certify any amendment to the LIP; and (2) the Commission will not be bound by the decision because it is not a party. Again, however, Malibu misunderstands the relevance of these facts. That the Commission must certify any amendment to the LIP simply means Malibu can't unilaterally change the LIP—much as *any* official charged with enforcing an unconstitutional law cannot unilaterally change that law. Regardless, Malibu enforces the LIP, which means that relief must run against Malibu for it to be effective. If this Court orders Malibu to cease enforcement of the challenged provisions, the Seiders will attain the relief they seek: the ability to apply for a permit free from unconstitutional speech

---

[5] The same is true of Malibu's merits argument, which relies entirely on Malibu's claim that the LIP is not city policy because it was drafted by the Commission. But an LCP (of which an LIP is a component part) is by definition the policy of the applicable local government. *See* Cal. Pub. Res. Code § 30108.6 ("'Local coastal program' means a local government's (a) land use plans, (b) zoning ordinances, (c) zoning district maps, and (d) within sensitive coastal resources areas, other implementing actions, which, when taken together, meet the requirements of, and implement the provisions and policies of, this division at the local level."). Malibu's decades-ago resistance to drafting an LCP doesn't change that.

restrictions. Relief against the *Commission* would be useless to the Seiders at this point, since the Commission cannot approve or deny the Seiders' permit application. Indeed, at this stage, they could not even consider it.

It is of course true that the Commission will not be bound by the judgment in this case. But relief granted in a concrete dispute need not, and often cannot, extend to protect the prevailing party in a future dispute that may or may not occur. Should this matter eventually come before the Commission, the Seiders may then have a live dispute with that body. With a judgment in hand prohibiting Malibu's enforcement of the LIP provisions on the ground that they violate the First Amendment, the Seiders expect to fare better in a hypothetical future dispute with the Commission. But that dispute is not live *now*. Instead, the Seiders simply want to be considered for a Malibu CDP without the challenged unconstitutional provisions. The court can completely grant that relief in the context of the present action.

## C.   The Commission is not a required party under Rule 19

For many of the same reasons that the Seiders have standing to sue Malibu and not the Commission or the Commissioners, the Commission is not a required party under Rule 19. Even if the Commission possesses a sufficient interest in the case to seek intervention under Rule 24, that does not make it a required party such that the action cannot proceed unless it is joined.

Under Rule 19, a party is "required" if the court cannot afford complete relief between the existing parties without the absent party's presence *or* if disposing of the case in the absent party's absence would either (1) impair that party's ability to protect its interest in the case or (2) potentially subject an existing party to inconsistent obligations due to the absent party's interest. *See* Fed. R. Civ. P. 19(a); *see also Bd. of Trs. as Trs. of Operating Eng'rs Local 501 Security Fund v. Cty. of Orange*, No. 8:19-cv-02117-JLS-ADS, 2020 WL 4355502, at *2 (C.D. Cal. Apr. 6, 2020). If either criterion is satisfied, the court then must determine whether the party can be joined without destroying the court's jurisdiction over the action. *See Local*

*501*, 2020 WL 5355502, at \*2. If the absent party cannot be joined, the court then must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The party moving to dismiss based on failure to join a required party (here, Malibu) "bears the burden of demonstrating that dismissal or joinder is appropriate." *Local 501*, 2020 WL 5355502, at \*3 (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

First, "the complete relief portion of Rule 19(a) is concerned only with relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Id.* at \*3 (quoting *Fanning v. Grp. Health Co-op.*, No. C-07-1716MJP, 2008 WL 2148753, at \*3 (W.D. Wash. May 21, 2008) (internal quotation marks omitted)). As explained above, complete relief between the Seiders and Malibu is plainly possible without the Commission's joinder, as the Seiders are simply seeking declaratory and injunctive relief against Malibu's enforcement of its LIP in this particular case. That the Commission would not be bound by the judgment makes little difference because the Seiders do not need the Commission to do anything to obtain all the relief they have asked for in this action.

Second, while the Commission surely has some interest in the outcome of this litigation, a decision in favor of the Seiders would not impair the Commission's ability to protect that interest. Since the Commission has appellate jurisdiction over any permit application by the Seiders—indeed, it may even appeal Malibu's decision to itself—the Commission could reverse any permit grant without being a party to this case. It could also seek to intervene in this case to defend the LIP provisions. Perhaps the Commission would think twice about appealing to itself or reversing the permit grant in the face of a decision by this Court holding the challenged provisions unconstitutional. Perhaps not. But the Commission's ability to protect its interest in the subject matter of this case is alive and well whether or not it is made a party.

Third, Malibu is wrong that a judgment that does not bind the Commission could potentially subject it to inconsistent legal obligations. "'[I]nconsistent obligations' are not . . . the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 976 (9th Cir. 2008) (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (per curiam)). No such situation could befall Malibu here. At worst, the Commission could reverse Malibu's decision to grant a permit to the Seiders. At that point, Malibu's hands would be clean and the Seiders would have a live dispute with the Commission over its interpretation of the LIP.

Malibu argues that the Commission could seek a cease and desist order under Cal. Pub. Res. Code §§ 30809–30810 or file a writ action in state court under Cal. Pub. Res. Code § 30802 against it, but neither of these are realistic options.

The structure of Sections 30809 and 30810 make it clear that any cease and desist order with respect to the Seiders' proposed sign would issue to the Seiders, as they, not Malibu, would be deemed in violation for their development. *See id.* § 30810(a)(2) (noting permissibility of such an order to enforce an LCP where "[t]he commission requests and the local government or port governing body declines to act, or does not take action in a timely manner, regarding an alleged violation which could cause significant damage to coastal resources"); *id.* § 30810(b) ("The cease and desist order may be subject to such terms and conditions as the commission may determine are necessary to ensure compliance with this division, *including immediate removal of any development* or material or the setting of a schedule within which steps shall be taken to obtain a permit pursuant to this division." (emphasis added)). Indeed, the purpose of such an order is to stop *unpermitted* development the Commission believes to be in violation of the Coastal Act or an LCP. Where a local government has issued a permit, the Commission's remedy is simply to exercise its

appellate jurisdiction.

Malibu's suggestion that the Commission might file a writ action against it is even further afield. The section Malibu cites, Cal. Pub. Res. Code § 30802, plainly applies only to actions not subject to the Commission's appellate jurisdiction—the title of the relevant section is "Decisions or actions not appealable to commission; petition for writ of mandate; intervention." The Commission need not (and probably could not) take any legal action against Malibu if it disagrees with this Court's decision and Malibu's implementation of said decision. As above, it could simply exercise its appellate jurisdiction over the Seiders' permit application.

In the end, the City is a long way from meeting its burden to demonstrate that the Commission is a required party under Rule 19. While the Commission may be entitled to intervene under Rule 24, this Court can adjudicate this dispute without the Commission's presence. Malibu's decision not to defend the challenged portions of the LIP does not mean the Commission must be a party to this case in order to decide it. Malibu's Rule 12(b)(7) motion should be denied.[6]

## II.  The Seiders Plausibly Allege That Malibu's Indemnification Clause Is Unconstitutional

Malibu next raises several arguments in support of dismissal of the Seiders' third and fourth causes of action, challenging the indemnification clause to which they must agree in order to apply for a CDP. Malibu argues that these claims are not ripe and that the Seiders lack standing. But the Seiders' injury is concrete and imminent—they cannot apply for a permit without subjecting themselves to the threat of significant liability. Complaint ¶ 36.[7] Under the relaxed standing and ripeness

---

[6] If the Court disagrees with Plaintiffs regarding the Rule 12(b)(7) motion, the proper remedy would be to order joinder of the Commission as a party (or the Commissioners as parties), rather than to dismiss the action.

[7] While the Seiders were informed by the City's Planning Director that their desired sign would be prohibited, the Seiders separately contend that the proposed language should properly fall outside the prohibitions of the LIP.

doctrines that the Ninth Circuit has repeatedly employed in the free speech context, the Seiders have sufficiently alleged a concrete injury that is appropriate for pre-enforcement review.

Malibu is also wrong on the merits. Because the indemnification requirement applies to all sign permits, it is a speech restriction that must be narrowly tailored to further a substantial government interest. The Seiders have plausibly alleged that placing them on the hook for all of Malibu's legal expenses is not narrowly tailored to further any conceivable interest Malibu might have in requiring indemnification.[8] For the reasons that follow, the motion to dismiss the third and fourth causes of action should be denied.

## A.   The Seiders have standing to challenge the Indemnification Clause

Much of Malibu's argument focuses on whether "uncertain and potentially substantial future liability" is too speculative to confer standing to challenge the indemnification clause contained in the City's Uniform Application. MTD at 14–15. But the injury to the Seiders is not merely the potential liability, but the chilling effect that such potential liability has on the Seiders *now*. *See Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020) ("A chilling of First Amendment rights can constitute a cognizable injury . . . ."). And as the Seiders have alleged, the indemnification provision alone dissuaded them from seeking a permit to engage in protected speech on their property. Complaint ¶¶ 33–36.

To the extent that the injury to the Seiders does rely on the likelihood of future liability under the indemnification provision, it is nonetheless sufficient to establish

---

[8] Because the indemnification clause violates the First Amendment as applied here, it cannot be imposed as a condition on a permit application. *See Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) ("[W]e have held that the Government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit.'" (quoting *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 59 (2006))).

standing. In the First Amendment context, the Ninth Circuit has required only "a substantial risk the harm will occur." *Index Newspapers*, 977 F.3d at 825. To be sure, the Seiders do not (and cannot) allege the extent of the liability that the indemnification provision might create for their particular CDP. But the threat of potential liability is far from speculative. Under the plain language of the indemnification provision, property owners are required to indemnify the City against "all liability and costs" relating to a permit application and shall reimburse the City for any expenses incurred in "*any lawsuit* challenging the City's actions concerning this project," including "without limitation" any award of litigation expenses. Complaint ¶ 22 (emphasis added).[9] And the City concedes that it will enforce the indemnification provision against the Seiders, were the city to approve a permit that is subsequently challenged. MTD at 14. If their permit is approved, the Seiders will face the very real prospect of financing both a third party's lawsuit and the City's defense—a potentially expensive proposition. The uncertainty around this potentially substantial liability is precisely what discouraged the Seiders from seeking a permit at all. Complaint ¶¶ 33–36.

Malibu's reliance on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), is misplaced. In *Clapper*, the Court found the allegations too speculative where no plaintiff could allege that any particular individual would be surveilled under a particular statute. *Id.* at 411–12. Because the surveillance statute (and the government procedures under it) were unknown, the plaintiffs could only speculate as to which individuals might fall under that statute and would therefore be targeted for

---

[9] Malibu states that the Seiders' Complaint is "devoid of any allegation that the City is 'seriously intent on enforcing' the clause in any context other than in a defense of *the City's* approval of a permit." MTD at 14. But as the Seiders have alleged, the language of the indemnification clause does not preclude such application. Complaint ¶ 63. However, even if the indemnification clause is limited to lawsuits arising out of a permit approval, it still represents uncertain potential liability that is sufficient to chill the Seiders' speech. *Id.*

surveillance. *Id.* at 411. Further, even if individuals were to be targeted for surveillance, the plaintiffs could not be sure that the authority was not found under a different national security statute. *Id.* But there is no question who is targeted by Malibu's indemnification clause: all property owners that apply for a CDP must agree to the indemnification provision. Complaint ¶ 35.[10] And as Malibu has stated, it "will enforce the clause to defend its approval of the Seiders' CDP application." MTD at 14. While the amount of the indemnification may be unknown, the enforcer and its target are not.

To the extent that Malibu cites *Clapper* for its rejection of an alternative theory of standing based on costs incurred out of fear of a speculative injury, it is simply inapposite. *See* MTD at 13. The Seiders allege only the chilling effect caused by the indemnification provision. They are currently refraining from engaging in a desired form of speech—the erection of a sign on their private property—because the permit Malibu requires for such a sign is also conditioned on an agreement to indemnify the City without limitation against any legal challenge.

Finally, Malibu contends that no indemnity obligations would be triggered because "any approval or denial would issue from the Commission, and any legal challenge would be directed accordingly." MTD at 14. But as discussed above, Malibu is the entity tasked with handling permitting decisions under its certified LCP. Cal. Pub. Res. Code § 30603. The only way for the Seiders to obtain a sign permit is to accede to the City's unconstitutional demand for indemnification.[11]

---

[10] In its motion, Malibu cites to a different provision of the Municipal Code, governing Temporary Use Permits. MTD at 4; *see also* Malibu RJN, C. However, the language of this provision differs from the language found on the Coastal Development Permit application in that it expressly limits indemnity to "any claim, action or proceeding against the city or its officers, agents, or employees to attack, set aside, void, or annul *approval* of this permit . . . ." Malibu Municipal Code § 17.68.070(R) (emphasis added).

[11] Because of the 60-day statute of limitations contained within the Coastal Act in Public Resources Code section 30801, interested parties routinely file a petition for

1

**B.    The Seiders' challenge to the indemnification clause is ripe**

2    Malibu further argues that the Seiders' challenge to the indemnification clause

3    is unripe because it is a "pre-enforcement challenge" to the regulation. But in the

4    First Amendment context, where the very existence of a regulation may chill speech,

5    ripeness requirements are necessarily relaxed. *See, e.g.*, *Wolfson v. Brammer*, 616

6    F.3d 1045, 1058 (9th Cir. 2010) ("[W]e have applied the requirements of ripeness

7    and standing less stringently in the context of First Amendment claims.").

8    Accordingly, litigants are routinely allowed to challenge regulations first, rather than

9    "speak first and take their chances with the consequences." *Bayless*, 320 F.3d at 1006.

10    In the free speech context, the Ninth Circuit looks to three factors to assess

11    whether a pre-enforcement challenge is ripe for review: (1) whether a plaintiff has

12    articulated a concrete plan to violate the law or to engage in protected conduct;

13    (2) whether the plaintiff has demonstrated that the threat of potential enforcement

14    "will cause him to self-censor"; and (3) the history of past enforcement of the statute.

15    *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838–39 (9th Cir. 2014). The

16    Seiders have sufficiently pleaded facts meeting this relaxed standard.

17    As to the first factor, the Ninth Circuit has upheld pre-enforcement challenges

18    so long as the plaintiff alleged plans that are "more than hypothetical." *Wolfson v.*

19    *Brammer*, 616 F.3d at 1059. In *Wolfson*, the Ninth Circuit held that a plaintiff's

20    challenge to restrictions on certain campaign activities and political speech was ripe

21    where the plaintiff had "expressed a desire" to engage in such speech in future

22    electoral campaigns. *Id.* at 1060. This was despite the "undisputed fact that Wolfson

23    has never been threatened with enforcement proceedings." *Id.* at 1059.

24    The Seiders' plans are far from hypothetical. Rather, the Seiders detailed in

25    their Complaint the numerous concrete steps they have already taken consistent with

26    their desire to post a sign detailing the limits of their private property as soon as

27
28    writ of mandate in superior court following permit approvals by a local government
in addition to seeking appellate review with the Coastal Commission.

possible. Complaint ¶¶ 30–33, 35–39. Dennis Seider repeatedly emailed Malibu's Planning Director inquiring about the permit process. *Id.* ¶¶ 30, 32, 38. These emails included proposed language that the Seiders planned to submit for approval. *Id.* ¶¶ 30, 38. The Seiders further alleged that—in the absence of a sign detailing their property rights—their private property has repeatedly been invaded by trespassers, an issue that is now exacerbated by the ongoing pandemic. *Id.* ¶¶ 28–29. In short, the Seiders are not asserting a hypothetical desire to engage in unspecified protected activity in the future, but a *current* desire to engage in *specific* protected activity.

When looking at the second factor, the question is not whether the plaintiff faces imminent enforcement, but whether the existence of the regulation will cause the plaintiff to self-censor. *Bowen*, 752 F.3d at 839. Indeed, the Ninth Circuit has recognized that the threat of potential enforcement "may be inherent in the challenged statute" sufficient to satisfy the ripeness inquiry. *Wolfson*, 616 F.3d at 1059. In their Complaint, the Seiders allege that—but for the indemnification clause—they would have submitted a permit application to the City of Malibu. Complaint ¶ 36. Regardless, the City concedes that it would enforce the indemnification provision against the Seiders in at least some circumstances. MTD at 14. ("[T]he City will enforce the clause to defend its approval of the Seiders' CDP application."). Whether the City would seek to enforce the indemnification provision against the Seiders in all instances is irrelevant—the fact that the permit application is conditioned upon acceptance of the provision has already chilled the Seiders' speech.

The third consideration—history of enforcement—is a difficult inquiry in this context, because the City is not "enforcing" a direct restriction on speech, but placing an unconstitutional condition on the Seiders' attempt to engage in protected speech. However, as noted above, the City acknowledges that it would enforce the indemnification provision to any legal challenges to a permit approval. MTD at 14.

Malibu's argument underlines the reason that courts allow pre-enforcement review in the First Amendment context. Malibu would have the Seiders subject

themselves to the indemnification clause first, and then—in any resulting litigation—raise claims against the indemnification clause to which they had already agreed. MTD at 16. This is precisely the argument that courts have routinely rejected, because it would require the Seiders to "speak first and take their chances with the consequences." *Bayless*, 320 F.3d at 1006.

### C. The Seiders state plausible claims that the indemnification clause is unconstitutional

#### 1. The Seiders have plausibly alleged that the indemnification clause as applied to them violates the First Amendment[12]

Turning to the merits, Malibu spends most of its argument asserting that that the indemnification clause is not facially invalid. But the Seiders acknowledge that the indemnification provision is not unconstitutional in *all* applications—indeed, many (if not most) CDPs likely involve no speech. The Seiders instead challenge the indemnification provision only as applied to them—in the context of a sign permit application. The Supreme Court has acknowledged the "special respect" that courts must pay for individual liberty when the government seeks to restrict a person's ability to "speak" through signs on their own private property. *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994).

The Seiders agree with Malibu that the indemnification provision is content-neutral. However, because Malibu applies the indemnification clause for all sign permit applications, it is a restriction on speech that must be "narrowly tailored to serve a substantial governmental interest." *Long Beach Area Peace Network*, 574 F.3d at 1039. But Malibu's indemnification provision, on its face, imposes an unknown and potentially substantial amount of liability for any actions taken by City employees or agents, so long as that action is "related" in some fashion to the permit application. Complaint ¶ 22. The language reads so broadly as to encompass almost any legal challenge, no matter how frivolous, and without regard to context.

---

[12] If the provision violates the First Amendment on its own, then it cannot be imposed as a permitting condition either. *See supra* n.8.

To be sure, the Ninth Circuit has upheld content-neutral indemnification provisions in some contexts. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1056–58 (9th Cir. 2006); *Kaahumanu v. Hawaii*, 682 F.3d 789, 809–10 (9th Cir. 2012). But it has struck down indemnification provisions that are not narrowly tailored. *See Long Beach Area Peace Network*, 574 F.3d at 1039.

Malibu asserts that *Food Not Bombs* "directly precludes" the Seiders' challenge. However, in *Food Not Bombs*, the plaintiffs argued only that the indemnification was content-based. *Food Not Bombs*, 450 F.3d at 1058 (Wardlaw, J., concurring). The plaintiffs had failed to argue (and therefore waived) any claim that the provision was not narrowly tailored, which is precisely the claim that the Seiders raise here. *See Long Beach Area Peace Network*, 574 F.3d at 1041. As the *Long Beach* court noted, two of the judges on the *Food Not Bombs* panel suggested that the narrow tailoring argument would have prevailed if raised. *See id.*

In *Kaahumanu*, the Ninth Circuit upheld an indemnification requirement as sufficiently narrowly tailored, because indemnification was limited to injury, property damage, or liability to third parties *caused by the permittee*. *Kaahumanu*, 682 F.3d at 809. In other words, applicants were not required to hold the state harmless for *any* actions that might arise from an event, such as those caused by the state's own actions or the unforeseeable actions of third parties. *Id.*

It was precisely that distinction that led the Ninth Circuit in *Long Beach* to invalidate an indemnification provision for lack of narrow tailoring. The court there reasoned that the challenged indemnification clause was not narrowly tailored because it was "susceptible to a broad reading" that could encompass liability for acts and omission of not only permittees, but also of the City and unassociated third parties. *Long Beach Area Peace Network*, 574 F.3d at 1039; *see also iMatter*, 980 F. Supp. 2d at 1380 ("The Ninth Circuit found that the Long Beach regulation was not narrowly tailored because it required a free speech group to indemnify the city for any accidents or injuries associated with the speech activity, even if the incidents

1   were not caused by a member of the group.").

2       The Seiders have plausibly alleged that the indemnification clause here is

3   *broader* than the provision struck down in *Long Beach*. Complaint ¶¶ 22, 63–65, 69–

4   71. Whereas *Long Beach* limited indemnification to "liability caused by the conduct

5   of the event", Malibu's indemnification provision would require the Seiders to

6   indemnify the City for all liability and costs "relating to the City's actions concerning

7   this project . . . ." *Id.* ¶ 22. Such broad language certainly encompasses even

8   "frivolous challenges" arising out of any actions Malibu might take regarding a

9   permit application. *Id.* ¶ 63. Indeed, all that is required is that the liability "relate[] to

10  the City's actions." *Id*. ¶ 22. The uncertain and potentially substantial liability

11  represented by the provision is also almost entirely outside of the control of permit

12  applicants. *Cf. Long Beach*, 574 F.3d at 1040 ("The provision requires permittees to

13  assume legal and financial responsibility even for those 'activities at the event' that

14  are outside the control of the permittee . . . ."). While the City may have a substantial

15  interest in protecting its fisc from the cost of legal challenges, a requirement that

16  speakers "contractually bind themselves to indemnify the City for the costs

17  associated with wholly meritless suits brought by third parties is . . . constitutionally

18  unsound." *Food Not Bombs*, 450 F.3d at 1052 (Berzon, J., dissenting).

19      Malibu also expends great effort discussing the overbreadth doctrine. MTD at

20  21–23. This appears to be due to a single allegation in the Seiders' complaint that the

21  indemnification provision is "overbroad because it would require Plaintiffs to pay for

22  the City's defense of *their own suit* challenging Malibu's decision to deny a sign

23  CDP." Complaint ¶ 70. Because the Seiders allege that their own speech is chilled,

24  the overbreadth doctrine is irrelevant to their claim.[13] However, overbreadth is

---

[13] To the extent that this Court were to find that the Seiders lacked standing to
challenge the indemnification provision, the overbreadth doctrine would simply
"serve[] to overcome what would otherwise be a plaintiff's lack of standing." *Nunez
by Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997). Because the Seiders
have alleged sufficient facts to establish standing, however, the question here is

closely related to narrow tailoring: Where a broadly drafted indemnification requirement imposes unknown (and potentially substantial) liability on permit applicants, it is likely to dissuade "a large number of potential speakers from exercising their rights." *iMatter*, 980 F. Supp. 2d at 1381. To the extent that the overbreadth doctrine applies at all, it would simply allow the Court to recognize that where one plaintiff alleges potential injury from a statute, many others not before the court may also be chilled from constitutionally protected conduct because of the existence of the statute. *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

### III. The Seiders Plausibly Allege a State Law Ultra Vires Claim

Finally, with respect to the state-law ultra vires claim, Malibu argues that the Seiders lack standing because they did not apply for a CDP. But "standing does not require exercises in futility." *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002). "Courts do not require plaintiffs to submit a formal application where the challenged policy or ordinance unambiguously rendered an application futile." *AshBritt, Inc. v. Ghilarducci*, No. 20-04612, 2020 WL 7388071, at *2 (N.D. Cal. Dec. 16, 2020) (citing *Taniguchi* and *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814 (9th Cir. 1996)). The same is true when the defendant makes the permit denial "abundantly clear in its written and oral communications." *Dragovich v. U.S. Dep't of the Treasury*, 764 F. Supp. 2d 1178, 1185 (N.D. Cal. 2011). Malibu's citation of *Madsen v. Boise State University*, 976 F.2d 1219, 1221 (9th Cir. 1992), is unavailing—that case simply demonstrates that standing may not exist where "the absence of an application render[s] the policy and the legal dispute ambiguous." *Dragovich*, 764 F. Supp. 2d at 1186. Were it otherwise, much of the Ninth Circuit's later standing jurisprudence would be wiped out.

Here, Malibu unambiguously told the Seiders that a permit would not be

---

"more of a technical academic point than a practical concern." *Id.*

granted—and indeed still maintains that no permit could issue under the LIP. The ultra vires claim is premised on the theory that Malibu is incorrectly interpreting its LIP, but that is a purely legal question that does not require a futile application to resolve. Therefore, the Seiders have standing to bring this challenge.

On the merits, Malibu construes the ultra vires claim as sounding in Section 1094.5 of the California Code of Civil Procedure, and then says the claim would fail because Section 1094.5 requires a final decision. But here too, futility is a recognized exception to the finality requirement. *See Riverside Cty. Sheriffs' Dep't v. Stiglitz*, 147 Cal. Rptr. 3d 292, 300 (2012), *aff'd on other grounds by* 60 Cal. 4th 624 (2014). Since Malibu has already told the Seiders how it would decide a permit application, the lack of a final decision does not preclude review.

Finally, Malibu speculates whether a writ action under Section 1094.5 would be permissible since the Seiders could appeal a permit denial to the Commission. But it does not make any argument on that point—instead simply calling the question a "complex" one of state law. And since Malibu does not defend the LIP provisions, the Court is not at this point in a position to evaluate whether the City is exceeding its authority under the LIP. The most prudent course is therefore for the Court to deny the motion to dismiss the ultra vires count and consider the interpretation of the challenged provision in a more developed context.

## Conclusion

The Court should deny the motion to dismiss.

DATED: January 11, 2021.

Respectfully submitted,

JEREMY TALCOTT
CHRISTOPHER M. KIESER

By s/ Christopher M. Kieser
CHRISTOPHER M. KIESER
*Attorneys for Plaintiffs*