JEREMY TALCOTT, No. 311490
Email: jtalcott@pacificlegal.org
Pacific Legal Foundation
1212 W. Amerige Ave.
Fullerton, California 92833-2709
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

CHRISTOPHER M. KIESER, No. 298486
Email: ckieser@pacificlegal.org
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS SEIDER and LEAH SEIDER, as Trustees of the Seider Family Trust,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MALIBU, JOHN AINSWORTH, in his official capacity as Executive Director of the California Coastal Commission, and DONNE BROWNSEY, in her official capacity as Chair of the California Coastal Commission, CARYL HART, in her official capacity as Vice-Chair of the California Coastal Commission, DAYNA BOCHCO, in her official capacity as commissioner of the California Coastal Commission, EFFIE TURNBULL-SANDERS, in her official capacity as commissioner of the California Coastal Commission, SARA AMINZADEH, in her official capacity as commissioner of the California Coastal Commission, LINDA ESCALANTE, in her official capacity as commissioner of the California Coastal Commission, MIKE WILSON, in his official capacity as commissioner of the California Coastal Commission, CATHERINE RICE, in her official capacity as commissioner of the California | No. 2:20-cv-8781-SPG-MRW<br><br>**FIRST AMENDED COMPLAINT** |

Coastal Commission, STEVE PADILLA,
in his official capacity as commissioner of
the California Coastal Commission,

Defendants.

**INTRODUCTION**

1.     "The point of the First Amendment is that majority preferences must be expressed in some fashion other than silencing speech on the basis of its content." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 392 (1992). That is what we have here: the enforcement of a City of Malibu ordinance, drafted and also enforced by the California Coastal Commission, designed to further majority preferences for open and public beach for all, regardless of private ownership of the beach. Plaintiffs Dennis and Leah Seider bring this lawsuit because their proposed speech, as described more fully below, does nothing more than lawfully and properly demarcate the line between where the plaintiffs' property line on the beach ends and the public's right of access to the beach begins. Because of the content of their sign, neither the Commission nor the City will permit their speech. That is a content-based impermissible restriction on speech, and the Court must declare it unconstitutional. Hanging a sign on one's property to declare it private property is a tradition likely as old as the country itself, and prohibiting such a trifling amount of speech amounts to nothing short of unconstitutional conduct that the Court cannot countenance.

2.     The Seiders have an oceanfront home in Malibu, California. Their property extends seaward to the mean high tide line. As a condition of the original Commission-issued permit that authorized building the home, the last 25 feet of the beach before the mean high tide line is burdened by a lateral access easement for the benefit of the public, but much of the dry sand beach is unencumbered, private beach. To put trespassers on notice and protect their property against future claims of prescriptive rights, the Seiders want to put up a simple, truthful sign on their property demarcating the boundary between unencumbered private property and the easement.

In the absence of a sign, members of the public have asserted the right to remain on the Seiders' private property—specifically citing the lack of signage.

3.     In the Coastal Zone, California law requires a Coastal Development Permit for most signs. The City of Malibu has primary jurisdiction and authority for permitting. When Dennis inquired about obtaining a permit for the proposed sign, Malibu's planning director explained in no uncertain terms that Malibu could not issue a permit for such a sign because the sign would violate a provision of the City's Local Implementation Plan (LIP) for coastal development that prohibits signs "purport[ing] to identify the boundary between State tidelands and private property."

4.     Under the LIP, in instances where coastal development within Malibu may "lessen or negate" the purpose of a Commission-issued permit condition, permit applicants may also be required to obtain an amendment to that condition and authorization for the proposed development. According to the LIP, that initial determination is made by the Director of the Malibu Planning Commission.

5.     Any permit applicant seeking an amendment to a previous permit condition must proceed by applying directly to the Commission.

6.     The Seiders' proposed sign truthfully describing the lateral access easement would not "lessen or negate" that condition of the original Commission-issued permit, so the City is the proper permitting authority to which to apply.

7.     If the City is not the proper permitting authority, the Commission has authority to determine if the Seiders' proposed sign complies with Malibu's LIP and the California Coastal Act.

8.     Despite the fact that their proposed sign is expressly prohibited by the LIP, the Seiders considered applying for a permit from the City anyway, but found that Malibu requires them, as a condition of applying, to agree to indemnify the City "from and against all liability and costs relating to the City's actions concerning [the] project, including (without limitation) any award of litigation expenses in favor of any person or entity who seeks to challenge the validity of any of the City's actions

or decisions in connection with [the] project." Since the enforcement of this provision could cause Dennis and Leah significant liability even if the permit were granted, they chose not to apply and instead seek injunctive and declaratory relief.

9. In order to protect their property rights and vindicate their freedom of speech, the Seiders bring this action seeking prospective relief that will guarantee them the ability to apply for whichever permits and amendments are necessary without the burden of content-based speech restrictions. This action also seeks a declaration that the indemnification clause unconstitutionally conditions Dennis and Leah's free speech rights on the agreement to pay Malibu's legal bills.

10. This case lies at the intersection between free speech and property rights. Americans should not—and do not—need government permission to mark the boundaries of their private property in order to enforce their fundamental right to exclude trespassers. Neither the Commission nor the City can demand that the Seiders forfeit both their First Amendment and property rights.

### JURISDICTION AND VENUE

11. This action arises under the First Amendment to the United States Constitution, incorporated against the States by the Fourteenth Amendment and enforced through 42 U.S.C. § 1983. The Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343(a) (redress for deprivation of civil rights), and 1367 (supplemental jurisdiction). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(2). Defendant, the City of Malibu, is located within this district, and a substantial part of the events giving rise to this claim have occurred in the Central District of California.

13. This Court is not prevented by Eleventh Amendment sovereign immunity from exercising jurisdiction over state actors, such as the Coastal Commission's executive director and commissioners, if those officials are attempting to enforce unconstitutional laws against the plaintiffs. *Ex parte Young*, 209 U.S. 123,

167 (1908). The Seiders seek only prospective declaratory and injunctive relief against the executive director and commissioners. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996).

14. A live controversy exists between the parties because the City of Malibu and the Commission continue to prohibit the Seiders from posting a truthful sign describing the limits of the parcel they own.

15. A live controversy also exists with respect to the indemnification requirement because the City of Malibu continues to require permit applicants to agree to indemnify the City in order to apply for a sign permit.

## PARTIES

16. Plaintiff Dennis Seider is a retired attorney who practiced law in California for over 40 years. He is an inactive member of the California bar. He and his wife, Plaintiff Leah Seider, are Trustees and Trustors of the Seider Family Trust, which owns the property located at 26642 Latigo Shore Drive in Malibu, California ("the Property").

17. Defendant City of Malibu is a municipality in Los Angeles County, California. Pursuant to the Coastal Act, Defendant has had primary permitting authority for all Coastal Development Permits, including the sign permit at issue in this case, since the California Coastal Commission certified its Local Coastal Program in 2002.

18. Defendant John Ainsworth, in his official capacity, is the Executive Director of the California Coastal Commission. Mr. Ainsworth has the power and responsibility to administer the affairs of the Commission, including its power to consider amendments to existing coastal development permits under Title 14 California Code of Regulations, Section 13166.

19. Defendant Donne Brownsey, in her official capacity, is the chair of the California Coastal Commission. Ms. Brownsey has the power and responsibility to ensure the enforcement of and abide by the requirements of the California Coastal

Act, including Sections 30210, 30211, 30213, 30220, 30221, as well as Title 14 California Code of Regulations, Section 13166. As a Commissioner, Ms. Brownsey would be entitled to vote on any material amendment or CDP application that is heard by the Commission.

20.     Defendant Dr. Caryl Hart, in her official capacity, is the vice-chair of the California Coastal Commission. Dr. Hart has the power and responsibility to ensure the enforcement of and abide by the requirements of the California Coastal Act, including Sections 30210, 30211, 30213, 30220, 30221, as well as Title 14 California Code of Regulations, Section 13166. As a Commissioner, Dr. Hart would be entitled to vote on any material amendment or CDP application that is heard by the Commission.

21.     Defendant Dayna Bochco, in her official capacity, is a Commissioner of the California Coastal Commission. Ms. Bochco has the power and responsibility to ensure the enforcement of and abide by the requirements of the California Coastal Act, including Sections 30210, 30211, 30213, 30220, 30221, as well as Title 14 California Code of Regulations, Section 13166. As a Commissioner, Ms. Bochco would be entitled to vote on any material amendment or CDP application that is heard by the Commission.

22.     Defendant Effie Turnbull-Sanders, in her official capacity, is a Commissioner of the California Coastal Commission. Ms. Sanders has the power and responsibility to ensure the enforcement of and abide by the requirements of the California Coastal Act, including Sections 30210, 30211, 30213, 30220, 30221, as well as Title 14 California Code of Regulations, Section 13166. As a Commissioner, Ms. Turnbull-Sanders would be entitled to vote on any material amendment or CDP application that is heard by the Commission.

23.     Defendant Sara Aminzadeh, in her official capacity, is a Commissioner of the California Coastal Commission. Ms. Aminzadeh has the power and responsibility to ensure the enforcement of and abide by the requirements of the

California Coastal Act, including Sections 30210, 30211, 30213, 30220, 30221, as well as Title 14 California Code of Regulations, Section 13166. As a Commissioner, Ms. Aminzadeh would be entitled to vote on any material amendment or CDP application that is heard by the Commission.

24. Defendant Linda Escalante, in her official capacity, is a Commissioner of the California Coastal Commission. Ms. Escalante has the power and responsibility to ensure the enforcement of and abide by the requirements of the California Coastal Act, including Sections 30210, 30211, 30213, 30220, 30221, as well as Title 14 California Code of Regulations, Section 13166. As a Commissioner, Ms. Escalante would be entitled to vote on any material amendment or CDP application that is heard by the Commission.

25. Defendant Mike Wilson, in his official capacity, is a Commissioner of the California Coastal Commission. Mr. Wilson has the power and responsibility to ensure the enforcement of and abide by the requirements of the California Coastal Act, including Sections 30210, 30211, 30213, 30220, 30221, as well as Title 14 California Code of Regulations, Section 13166. As a Commissioner, Mr. Wilson would be entitled to vote on any material amendment or CDP application that is heard by the Commission.

26. Defendant Catherine Rice, in her official capacity, is a Commissioner of the California Coastal Commission. Ms. Rice has the power and responsibility to ensure the enforcement of and abide by the requirements of the California Coastal Act, including Sections 30210, 30211, 30213, 30220, 30221, as well as Title 14 California Code of Regulations, Section 13166. As a Commissioner, Ms. Rice would be entitled to vote on any material amendment or CDP application that is heard by the Commission.

27. Defendant Steve Padilla, in his official capacity, is a Commissioner of the California Coastal Commission. Mr. Padilla has the power and responsibility to ensure the enforcement of and abide by the requirements of the California Coastal

Act, including Sections 30210, 30211, 30213, 30220, 30221, as well as Title 14 California Code of Regulations, Section 13166. As a Commissioner, Mr. Padilla would be entitled to vote on any material amendment or CDP application that is heard by the Commission.

28.     In their official capacities, Executive Director Ainsworth and the Commissioners are subject to federal lawsuits seeking prospective declaratory and injunctive relief prohibiting them from acting in a manner inconsistent with the United States Constitution. *Ex parte Young*, 209 U.S. 123.

## FACTUAL ALLEGATIONS

*Coastal Act and Malibu's Local Coastal Plan*

29.     In 1976, California enacted the Coastal Act, Cal. Pub. Res. Code § 30000, *et seq.*, in order to—among other things—"[m]aximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners." *Id.* § 30001.5(c).

30.     The Coastal Act requires municipalities such as Malibu to create "Local Coastal Programs" ("LCPs") for certification by the Coastal Commission. *See id.* § 30500(a) ("Each local government lying, in whole or in part, within the coastal zone shall prepare a local coastal program for that portion of the coastal zone within its jurisdiction."); *id.* § 30512 (describing certification procedure). When the Coastal Commission certifies an LCP, it vests the authority to grant or deny coastal development permits (CDPs) to the local government, although it retains appellate jurisdiction over permitting. *Id.* § 30519(a).

31.     Malibu's LCP was certified in 2002. As the City has noted, the LCP was drafted by the Commission and forced upon the City, in part by state legislation. Nevertheless, once the LCP was certified, the City assumed permitting authority along its shoreline, including authority over sign permits. Once certified, no part of an LCP can be amended without the Commission's certification.

32.   One portion of an LCP is a Local Implementation Plan ("LIP"), which consists of ordinances enacted to implement the LCP. Malibu's LIP, current as of February 2019, is available here: https://www.malibucity.org/DocumentCenter/View/4421/Malibu-Local-Implementation-Plan-LIP-?bidId= (last visited Oct. 10, 2022).

***Malibu LIP's Sign Permitting Scheme***

33.   Malibu's LIP subjects most signs to a permitting requirement. Exempted signs are listed in Section 3.15.4(D) of the LIP.

34.   For those signs requiring a permit, a permit applicant must seek a CDP on a form provided by Malibu's Planning Department. Permit applicants must pay a fee and provide certain information, including current development on the property; the proposed location of the sign; the proposed design, size, and colors of the sign; how the sign will be attached; the sizes and dimensions of all other signs on the property; photographs of the sides of all buildings on the property; and "[s]uch other information as the Planning Department may require to secure compliance with this Chapter." LIP § 3.15.4(A)(9).

35.   The Planning Manager then reviews all permit applications in light of eleven criteria specified in the LIP. *Id.* § 3.15.4(B). Many of these criteria are objective, but some are not. The Planning Manager must determine, for example, that the proposed sign "is not detrimental to the public health, safety, or welfare," that "the size, shape, color, and placement of the sign is compatible with the neighborhood," and that "a proposed sign in close proximity to any residential district does not adversely affect the quality or character of such residential area." *Id.* § 3.15.4(C).

36.   Certain signs are prohibited altogether, such that no permit will issue for them. LIP § 3.15.3. While most of these are content-neutral—such as the bans on "[p]rojecting signs," "[r]evolving signs," and [d]evices dispensing bubbles and free floating particles of matter"—Section 3.15.3(X) explicitly refers to the content of the

sign, prohibiting "[s]igns which restrict public access to State tidelands, public vertical or lateral access easement areas, or which purport to identify the boundary between State tidelands, and private property[.]" Although arguably this portion of the LIP does not apply to the Seiders' sign, since their sign identifies a boundary between an easement over the private property and the unencumbered private property, Malibu takes the position that this portion applies to the Seiders' proposed sign.

### Commission jurisdiction over certain coastal development

37. The California Coastal Commission retains authority over coastal development permits previously issued by the Commission. LIP § 13.10.2. This includes compliance with permit conditions. *Id.*

38. At the time a complete application for a Coastal Development Permit is made, the Planning Manager "shall determine and inform the applicant" of all applicable permit review procedures. *Id.*

39. If the coastal development is determined to "lessen or negate" the purpose of "any specific permit condition," the applicant "must seek to file an application with the Coastal Commission for an amendment to the Commission-issued coastal development permit and authorization for the proposed new development . . . ." *Id*; *see also* City of Malibu's Motion to Dismiss, ECF No. 13, at 4, 17 (noting that the Planning Director must conduct a "threshold review for jurisdiction," and that Planning Commission review would take place "[w]ere the Planning Director to determine that the Seiders' proposed sign would not 'lessen or negate the purpose of' a Commission-issued CDP . . . .").

40. The Commission will then determine whether the application for amendment shall be accepted for filing "pursuant to the provisions of Title 14 California Code of Regulations, Section 13166." *Id.*

41. Under Title 14, California Code of Regulations, Section 13166, the executive director "shall reject" any application for an amendment that "would lessen

or avoid . . . the intended effect of an approved" coastal development permit condition.

42.     An applicant may appeal the executive director's determination to the Commission. Title 14 Cal. Code Reg. § 13166(a)(1). If the Commission overturns the executive director's determination, the application must be referred to the Commission for approval. The Commission shall approve the amendment only if it finds by a majority vote that the amendment "conforms with the policies of Chapter 3 of the Coastal act or with a certified local coastal program if applicable." *Id*. § 13166(c).

***Malibu CDP Application—Indemnification Clause***

43.     Malibu requires property owners to fill out a form to begin the process of applying for a CDP. The current form is available here: https://www.malibucity.org/DocumentCenter/View/13101/Application_Uniform?bidId= (last visited Oct. 10, 2022).

44.     The permit application form includes an "indemnification clause," to which each applicant must agree before he or she may submit an application for a CDP. The indemnification clause reads:

> The property owners, and their successors in interest, shall indemnify and defend the City of Malibu and its officers, employees and agents from and against all liability and costs relating to the City's actions concerning this project, including (without limitation) any award of litigation expenses in favor of any person or entity who seeks to challenge the validity of any of the City's actions or decisions in connection with this project. The City shall have the sole right to choose its counsel and property owners shall reimburse the City's expenses incurred in its defense of any lawsuit challenging the City's actions concerning this project.

***Background on the Property***

45.     In 1976, the Seiders' predecessor-in-interest, Alexander Keith, sought a permit from the then-existing South Coast Regional Commission (a predecessor agency to the Coastal Commission) to build a single-family home on the Property. The South Coast Regional Commission granted the permit on the condition that Keith

record a deed restriction granting lateral public access up to 25 feet inland of the mean high tide line (except not where 25 feet inland would be within 5 feet of the permitted structure). Upon information and belief, Keith recorded the deed restriction. The permit grant is attached as Exhibit 1.

46.     When the Seiders came into possession of the Property, they were initially unaware of the deed restriction due to a mistake on the part of the title insurance company. At one point, Dennis contested the validity of the lateral access easement, but he now recognizes its validity.

47.     In 2018, a sign reading "PRIVATE BEACH" was positioned on the crossbeams below the Seiders' house, facing the beach, in order to establish their property ownership. A photograph of this location is attached as Exhibit 2.

48.     On April 29, 2020, the Coastal Commission sent Dennis and Leah a Notice of Violation of the California Coastal Act related to the "PRIVATE BEACH" sign. The Coastal Commission stated that the sign was unpermitted, that its content was contrary to the 1976 deed restriction, and that it violated Section 3.15.3(X) of the Malibu LIP. The Coastal Commission gave Dennis and Leah until May 13, 2020, to remove the sign. The Seiders removed the sign. This letter is attached as Exhibit 3.

49.     Further, in August 2022, Dennis Seider discovered an online guide and mobile app called "Our Malibu Beaches", which describes itself as "The definitive guide to the public beaches of Malibu." https://ourmalibubeaches.com/.

50.     The "Our Malibu Beaches" project is a collaboration between both private and public entities, and has received state funding through the Santa Monica Mountains Conservancy.

51.     Further, Santa Monica Mountains Conservancy and California Coastal Commission staff have actively worked with the app developers to provide information about the location of public beaches within Malibu.

52.     Dennis discovered that the Our Malibu Beaches online guide describes the private portion of his beach as such: "2d house-high, wood, A-shaped roof—can use dry sand for 25 ft from HTL, up to 5 ft from the house." This does not accurately describe the lateral access easement, which starts at the *mean high tide line* (and does not ambulate with daily tides) and continues 25 feet landward, but never beyond the 5-foot privacy buffer adjacent to the house.

53.     On August 28, 2022, Dennis emailed Jenny Price, Ben and John Adair (the three creators of the app), Joe Edmiston (Executive Director of the Santa Monica Mountains Conservancy), and George Lang (Director of the Conejo Recreation & Park District), requesting that the language be updated to more truthfully convey the nature of the lateral access easement. This email (and all replies described in ¶¶ 51–53) are attached as Exhibit 9.

54.     On August 29, 2022, Jenny Price responded, stating that "no one can possibly know" where the MHTL is, and copying Linda Locklin, manager of the Coastal Commission's Coastal Access Program and a Commission staff member.

55.     That same day, Dennis responded, noting that settled law affixes the MHTL at average high tide mark over an 18.6 year period. *See Borax Consol. v. City of Los Angeles*, 296 U.S. 10, 27 (1935).

56.     Ms. Locklin responded shortly thereafter, repeating that "the Mean High Tide Line moves every day and any survey that you perform only provides a HTL for one point in time. . . . Thus it is not possible to set a specific line in the sand to delineate the public/private line.

### Dennis' Attempt to Apply for a Sign CDP from Malibu

57.     Although Dennis took down the "PRIVATE BEACH" sign, the Seiders sought to put up a replacement sign that would explain the existence of the lateral access easement so as to not run afoul of the Coastal Commission's objection.

58.     Dennis and Leah needed the sign because, in the absence of signage, they have dealt with an influx of trespassers who assume the beach behind the house

is entirely public. When Dennis politely informs these trespassers that much of the dry sand is private property—and that the public only has an easement over the remainder—beachgoers often appeal to the lack of signage in asserting that the beach is public. A true and accurate sign is the only practical way for Dennis and Leah to protect their property rights and avoid potential confrontations with beachgoers. Although Dennis often welcomes beachgoers to stay for a particular day, he also asserts his family's property rights and informs the beachgoers of public beaches a short distance away.

59.     The COVID-19 pandemic exacerbated the problem. While many public beaches were closed, more beachgoers intruded onto the private portion of the Property. The lack of signage has significantly hindered the Seiders' ability to enforce their property rights, including their right to exclude trespassers.

60.     For these reasons, Dennis sought to apply for a CDP from Malibu. On June 1, 2020, he emailed Malibu Planning Director Bonnie Blue asking about the permit process. He inquired:

> I would like to apply for a permit to put up a sign on our house saying something like "PRIVATE PROPERTY FROM THIS SIGN ___ FEET SEAWARD AFTER WHICH THE PUBLIC HAS A LATERAL ACCESS ALONG THE SHORE" or something similar that is unambiguous and is still useful to the beach going public. I will have the property surveyed so the sign is accurate. How is getting the permit best done?

This email is included as part of Exhibit 4.

61.     On June 9, 2020, Blue responded that "[a]ccording to the LCP, a sign like this is not allowed. I've included the code section below. If you wanted to apply anyway, a CDP would be needed." The cited code section was LIP § 3.15.3(X), the prohibition on "[s]igns which restrict public access to State tidelands, public vertical or lateral access easement areas, or which purport to identify the boundary between State tidelands, and private property[.]" This email is included as part of Exhibit 4.

62.     On June 10, 2020, Dennis again emailed Blue, noting that he

> thought the sign was worded so as to not offend the language of the LIP prohibition as it does not restrict access to tidelands or lateral access nor does it identify a boundary between our property and the tidelands but does indicate instead delineate the boundary between our unburdened property and that part of our property burdened by a public lateral access . . . .

Dennis expressed concern that "we have quite a few folks that have come to sit under our house or on the beach immediately in front of our house and when we come down to use the beach they sometimes are abusive in their refusal to move, asking '. . .Where does it say this is private property; this is the Republic of California—I know my rights—I can sit wherever I want . . . etc.'" This email is also included in Exhibit 4.

63.    Despite the denial, Dennis sought to apply for a CDP anyway. On June 12, 2020, he downloaded the CDP application form described above (paragraph 43) and filled out most of it. However, he stopped at the indemnification clause and refused to agree, believing that it could subject he and Leah to significant liability whether or not the permit was ultimately granted.

64.    On June 15, 2020, Dennis emailed Blue and the members of the Malibu City Council to describe his problem with beachgoers trespassing on the private portion of his beach. He noted that:

> My neighbors and I have had an unusually large number of folks coming to the beach at Latigo by walking down our private street and using Tivoli Condominiums private stairs to access the sand, a series of private beaches with some deeded lateral access, because the nearest public access is blocked by the MRCA who states that it is being blocked at the order of the Los Angeles County Board of Supervisors.

He urged that the City Council repeal the prohibition on his proposed sign. This email is included in Exhibit 5. Blue wrote back on June 26 noting that any changes to the LIP would have to be approved by the Coastal Commission. That response is included in Exhibit 6.

65.    On June 17 Dennis emailed Blue again, asking whether "an agreement to indemnify the city" was a "necessary part of the application for a CDP regarding

a beach property sign." This email is also included in Exhibit 4. Dennis noted: "I certainly don't have the money to engage in that kind of Litigation." Blue indicated in response on June 26 that Dennis could not apply for a permit without agreeing to the indemnification provision. That response is included in Exhibit 6.

66.     Due to the indemnification clause, Dennis decided not to formally apply for a permit.

67.     On June 29, 2020, Dennis and Leah had the Property surveyed by Chris Nelson & Associates. The survey, which is attached as Exhibit 7, demarcates the mean high tide line as well as the location of the lateral access easement. It shows a significant portion of dry sand beach not within the easement.

68.     On September 10, 2020, Dennis emailed Blue again and proposed an alternative sign that would simply state the boundaries of the Property by reference to the mean high tide line, rather than attempt to ascertain the location of the line. The proposed sign would have read:

PRIVATE PROPERTY EXTENDS TO HOUSE FROM 25 FEET LANDWARD OF MEAN HIGH TIDE LINE

TO INCLUDE 25 FOOT LATERAL PUBLIC ACCESS

Blue indicated that this sign, too, would run afoul of the LIP. A further email from Blue emphasized that any sign on the beach describing the boundary of Dennis's private property would violate Section 3.15.3(X) of the LIP. These emails are attached as Exhibit 8.

69.     Blue's September 10 response did invite Dennis to apply for a permit with the new language, but Dennis was still unwilling to agree to the indemnification clause. He also did not want to go through a futile permit application process. At no point did Blue direct Dennis to apply to the Coastal Commission for an amendment to the 1976 permit.

70.     Although the mean high tide line is not a static location, it establishes by reference the true boundary of the Property. The prohibition in Section 3.15.3(X)

of Malibu's LIP prohibits Dennis and Leah from informing the public as to the true and accurate boundaries of their property. They are unable to use the surveyed location of the mean high tide line, the 18.6-year average, *see supra* ¶ __, or even reference the mean high tide line itself on a sign. As such, they have no practical way to enforce their property rights.

71.    The prohibition in Section 3.15.3(X) also leaves Dennis and Leah at risk of future claims of a prescriptive easement for the benefit of the public if they are not permitted to post adequate signage demarcating their property. The Coastal Commission openly solicits from the public evidence of public use over private property as part of its ongoing efforts to obtain prescriptive rights against private landowners. *See* Public Access Prescriptive Rights, California Coastal Commission, https://www.coastal.ca.gov/access/prescriptive-rights/#:~:text=This%20is%20called%20a%20public,for%20significant%20public%20access%20benefits.

***Procedural history***

72.    On March 1, 2021, this Court held that the California Coastal Commission was a necessary party within the ambit of Federal Rule 19(a). The Court dismissed with leave to amend and join the necessary parties. The Court further dismissed the Seiders' indemnification clause claims as unripe.

73.    The Seiders timely appealed that ruling to the Ninth Circuit.

74.    On June 1, 2022, the Ninth Circuit issued its opinion, affirming in part, vacating, and remanding. The Panel held that the Commission was a necessary party because it would have "primary jurisdiction" over the Seiders' permit application, because the proposed sign "although legally accurate, would 'lessen' the purpose of maintaining maximum public access to the public parts of the beach." *Seider as Tr. of Seider Fam. Tr. v. City of Malibu*, No. 21-55293, 2022 WL 1769793, at *1 (9th Cir. June 1, 2022).

75.     While the Ninth Circuit affirmed the dismissal of Counts Three and Four, it did not rule on ripeness, instead holding that such claims would only arise if and when the Seiders were required to obtain a CDP from the City, but not when they obtained an amendment or CDP directly from the Commission. *Id.* at *2.

76.     On September 2, 2022, this Court ordered the Seiders to join the California Coastal Commission or, if the Commission could not be joined, join the individual Commissioners of the California Coastal Commission.

### Any permit application to the City or Commission is futile

77.     The Seiders now find themselves in an impossible position. Section 13.10 of the LIP first requires that the Seiders make a "complete application" for a CDP to the City of Malibu. At that point, the "Planning Manager shall determine and inform the applicant of the applicable review procedures" under the LIP. LIP § 13.10. This includes a determination of whether the proposed development is "[s]ubject to the requirement for a Coastal Development Permit or permit amendment from the Coastal Commission." *Id.* § 13.10(A)(1). Where development would "lessen or negate the purpose of any specific permit condition . . . of a Commission-issued coastal permit", the applicant "must seek to file an application with the Coastal Commission" for an amendment and authorization for the proposed new development. *Id.* § 13.10.2(B). Any such application is governed by Title 14 California Code of Regulations, Section 13166. *Id.*

78.     The Ninth Circuit has held that the Seiders' proposed sign "although legally accurate, would 'lessen' the purpose" of the lateral access easement. *Seider as Tr. of Seider Fam. Tr.*, 2022 WL 1769793, at *1.

79.     Under Title 14 California Code of Regulations, Section 13166, the Executive Director "shall reject" any application for an amendment "if he or she determines that the proposed amendment would lessen . . . the intended effect of an approved or conditionally approved permit . . . ."

80.     Commission staff has previously confirmed this interpretation, noting in their April 29, 2020 enforcement letter that "pursuant to Section 13166 of the California Code of Regulations, Commission staff must reject an application to amend a previously issued CDP if that amendment would lessen the intended effect of the previously issued CDP . . . ." Exhibit 3.

81.     Taken together, the Ninth Circuit ruling and Malibu LIP require the Seiders to file an application that the governing regulations prohibit the executive director from even accepting.

82.     Even if such an application was accepted by the executive director, Commission staff believes it "must reject" any sign that would "interfere with public use of beach area required by a previously issued CDP to be open to the public." *See* Exhibit 3.

83.     Additionally, the Seiders cannot avoid this procedural trap by applying directly to the Commission for a CDP for their desired sign. The Commission has previously stated that a sign that "purports to identify the boundary between state tidelands and private property" is "a violation of both the City of Malibu's LCP and the Coastal Act." Exhibit 3.

84.     The Seiders are left in a Catch-22, where they are now substantively and procedurally prohibited from obtaining a permit to post a "legally accurate" sign for their property, and have no avenue available by which they may truthfully convey information to the public about their private property. Left with no way to apply for a CDP from the City or an amendment from the Commission without certain rejection, they seek prospective relief in this Court.

### FIRST CAUSE OF ACTION

**(Violation of the First Amendment — Content Based Speech Restriction)**

85.    Plaintiffs hereby re-allege the allegations in the proceeding paragraphs as though fully set forth herein.

86.    The First Amendment to the United States Constitution provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. The Fourteenth Amendment incorporates the First Amendment's protections against the States. *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

87.    Defendant City of Malibu is a "person" within the meaning of 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In denying Plaintiffs' request for a CDP and enforcing the indemnification clause against Plaintiffs, Defendant acted under color of state law. Defendant retains policies, as part of the LIP certified by the Coastal Commission, which effectively prohibit the Seiders from obtaining the necessary CDP.

88.    Defendants Executive Director John Ainsworth and the Commissioners, in their official capacities, are persons within the meaning of Section 1983 when, as here, they are sued for prospective relief to enjoin a violation of federal law under *Ex parte Young*. In their capacity as Executive Director and Commissioners, these defendants act under color of state law and enforce policies——the Commission-certified Malibu LCP, the Coastal Act, and Title 14 California Code of Regulations Section 13166, that effectively prohibit the Seiders from obtaining the necessary authorization to put up their sign because of the sign's content.

89.    The Supreme Court has held that content-based speech restrictions must satisfy strict scrutiny, "which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Ariz. Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). A restriction on signs is

content-based when "[t]he only way to determine" whether a sign is prohibited is "to evaluate the content and substantive message of the sign." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1078 (9th Cir. 2006).

90.    Because Defendants must read the content of Plaintiffs' sign to determine whether it is prohibited, Section 3.15.3(X) of Malibu's LIP is a content-based speech restriction. If Plaintiffs' proposed sign read "PUBLIC WELCOME ON BEACH," it would not run afoul of any prohibition, even if it were the same size, location, and color. It is the message of Plaintiffs' sign—that their unencumbered private property extends to a particular point, where a public easement begins—that makes it illegal.

91.    Further, Title 14 California Code of Regulations Section 13166 prohibits the executive director and commissioners from issuing amendments or CDPs that would "lessen" the purpose of a previously issued-permit condition. Because Defendants must read the content of Plaintiffs' sign to determine whether it is prohibited, Title 14 California Code of Regulations Section 13166 is a content-based speech restriction as applied to the Seiders' situation. The same is true of any Section of the Coastal Act that Defendants might interpret to prohibit the Seiders' sign based on its proposed content.

92.    Defendants lack a compelling interest in preventing Plaintiffs from posting a true and accurate sign demarcating their private property lines in order to deter trespassers.

93.    The LIP's total prohibition of signs describing oceanfront property is not narrowly tailored to any interest Defendants might have, such as promoting public access to the beach. As applied to the Seiders, Section 3.15.3(X), Title 14 California Code of Regulations Section 13166, and any provision of the Coastal Act that might be interpreted to prohibit the Seiders' proposed sign because of its content are content-based speech restrictions not narrowly tailored to further a compelling government interest. The Seiders are therefore entitled to relief in the form of a

declaration that these provisions are unconstitutional as applied to their proposed sign demarcating the true and accurate boundaries of their property. The Seiders are also entitled to injunctive relief prohibiting Defendants from enforcing these provisions against them.

## SECOND CAUSE OF ACTION

### (Violation of the First Amendment — Prior Restraint)

94.     Plaintiffs hereby re-allege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

95.     The First Amendment to the United States Constitution provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. The Fourteenth Amendment incorporates the First Amendment's protections against the States. *Gitlow*, 268 U.S. at 666.

96.     Defendant City of Malibu is a "person" within the meaning of 42 U.S.C. § 1983. *Monell*, 436 U.S. at 690. In denying Plaintiffs' request for a CDP and enforcing the indemnification clause against Plaintiffs, Defendant acted under color of state law.

97.     Defendants Executive Director John Ainsworth and the Commissioners, in their official capacities, are persons within the meaning of Section 1983 when, as here, they are sued for prospective relief to enjoin a violation of federal law under *Ex parte Young.* In their capacity as Executive Director and Commissioners, these defendants act under color of state law and enforce policies——the Commission-certified Malibu LCP, the Coastal Act, and Title 14 California Code of Regulations Section 13166, that effectively prohibit the Seiders from obtaining the necessary authorization to put up their sign because of the signs content.

98.     Defendants retain policies, as part of the LIP certified by the Coastal Commission, which grant reviewing officials nearly unbridled discretion to deny a sign CDP even if Plaintiffs' sign did not run afoul of Section 3.15.3(X) of the LIP or the Coastal Act.

99.    "Prior restraints on speech present some of the 'most serious and the least tolerable infringement' on free speech rights." *Cuviello v. City of Vallejo*, 944 F.3d 816, 831 (9th Cir. 2019) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)). A sign permitting scheme is a prior restraint on speech. *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818–19 (9th Cir. 1996).

100.    Sign permitting criteria is an unconstitutional prior restraint on speech when such criteria is not "sufficiently specific and objective so as to effectively place some 'limits on the authority of City officials to deny a permit.'" *Epona, LLC v. County of Ventura*, 876 F.3d 1214, 1222 (9th Cir. 2017) (quoting *Moreno Valley*, 103 F.3d at 819).

101.    Several criteria listed in the Malibu LIP—which either the Commission reviewing an amendment application or the City reviewing a CDP application must apply—require "broadly subjective determinations" on the part of City officials, which renders them invalid prior restraints. *Desert Outdoor Advert., Inc. v. City of Oakland*, 506 F.3d 798, 807 (9th Cir. 2007). These criteria are: the sign "is not detrimental to the public health, safety, or welfare," "the size, shape, color, and placement of the sign is compatible with the neighborhood," and that "a proposed sign in close proximity to any residential district does not adversely affect the quality or character of such residential area." LIP § 3.15.4(C).

102.    Because these three criteria essentially grant reviewing officials "unbridled discretion" to deny a permit based on subjective criteria, a permit requirement subject to such requirements is an unconstitutional prior restraint on speech. *Epona*, 876 F.3d at 1222.

103.    In order to justify a prior restraint, Defendants must demonstrate that the restraint is justified without reference to the content of the speech, and is narrowly tailored to serve a compelling governmental interest. Such amorphous criteria have little meaning if not to regulate content—objective criteria suffice to limit the place

and manner of signage—and Defendants have no compelling interest in such regulation.

104.    Because Defendants may maintain a sign permitting scheme so long as the criteria for obtaining a permit are specific and objective, Plaintiffs seek only a declaration that the three criteria described in Paragraph 56 are unconstitutional both on their face and as applied to Plaintiffs' proposed sign. Plaintiffs are entitled to injunctive and declaratory relief.

**THIRD CAUSE OF ACTION**

**(Indemnification Clause — Unconstitutional Condition)**

105.    Plaintiffs hereby re-allege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

106.    Defendant City of Malibu is a "person" within the meaning of 42 U.S.C. § 1983. *Monell*, 436 U.S. at 690. In requiring Plaintiff to agree to the indemnification clause, Defendant acted under color of state law.

107.    The Supreme Court has "held that the Government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit.'" *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) (quoting *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 59 (2006)).

108.    If the Seiders must apply for a CDP from Malibu, the indemnification clause substantially burdens Plaintiffs' free speech rights—it effectively prohibits them from even applying for a sign CDP unless they agree to pay a potentially substantial, and certainly unknown, amount of money to defend Malibu against any challenges, even frivolous challenges, that may arise as to its actions regarding the permit. On its face, the indemnification clause applies both to permits grants and denials, meaning that Plaintiffs would be forced to pay for Malibu's defense of their own suit challenging a permit denial. And even if Malibu granted a permit, Plaintiffs

may have to pay a significant sum should any third-party challenge Malibu's decision to grant the permit.

109.   The potential for substantial liability chills Plaintiffs' free speech rights to the point of dissuading them from applying for a CDP.

110.   Because the indemnification clause unconstitutionally conditions Plaintiffs' receipt of—and even application for—a permit to speak on such uncertain and potentially substantial future liability, it is an unconstitutional condition as applied to them. Plaintiffs are therefore entitled to injunctive and declaratory relief.

**FOURTH CAUSE OF ACTION**

**(Indemnification Clause — Infringement on First Amendment Rights)**

111.   Plaintiffs hereby re-allege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

112.   Defendant City of Malibu is a "person" within the meaning of 42 U.S.C. § 1983. *Monell*, 436 U.S. at 690. In requiring Plaintiff to agree to the indemnification clause, Defendant acted under color of state law.

113.   Aside from being an unconstitutional condition on the ability to apply for a CDP, the indemnification clause is also an unconstitutional infringement on Plaintiffs' free speech rights. Even content-neutral infringements like the indemnification clause may pose First Amendment problems. Such "time, place, and manner" restrictions must be narrowly tailored to further a significant government interest. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984); *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1039–40 (9th Cir. 2009).

114.   The City of Malibu may have a significant interest in protecting itself from financial liability in the form of lawsuits, but the indemnification clause is not narrowly tailored to protect that interest. Instead, it burdens far more speech than necessary and chills expression by exposing Plaintiffs to an "unknown amount of liability" *iMatter Utah v. Njord*, 980 F. Supp. 2d 1356, 1381 (D. Utah 2013). Such

liability could result merely from organizations opposed to private ownership of the beach deciding to sue Malibu should it grant the permit. *Cf. id.* ("The organization is required to defend the State against all third-party claims alleging some action by a member of the organization, even if those claims are frivolous. Third parties who disagree with the content of the organization's speech could use this tactic to punish an organization after the event.").

115.   The indemnification clause is also overbroad because it would require Plaintiffs to pay for the City's defense of *their own suit* challenging Malibu's decision to deny a sign CDP.

116.   Because the indemnification clause limits Plaintiffs' free speech and is not narrowly tailored to further a significant government interest, it is unconstitutional. Plaintiffs are thus entitled to injunctive and declaratory relief.

## PRAYER FOR RELIEF

1.   An entry of judgment declaring that Section 3.15.3(X) of the Malibu LIP, which restricts signs that "purport to identify the boundary between State tidelands and private property," is an unconstitutional content-based speech restriction, and thus any reliance upon that section by Defendants to prohibit the sign is unenforceable.

2.   An entry of judgment declaring that the provisions of Title 14 California Code of Regulations Section 13166 and the public access portions of the Coastal Act are unconstitutional as applied to the Seiders to the extent they require Defendants to engage in content-based speech restriction to prohibit the Seiders from posting a legally-accurate sign describing their property.

3.   An entry of a permanent injunction prohibiting Defendants from enforcing LIP Section 3.15.3(X) as well as provisions of Title 14 California Code of Regulations Section 13166 and the public access portions of the Coastal Act against Plaintiffs, to the extent they require Defendants to engage in content-based speech

restriction to prohibit the Seiders from posting a legally-accurate sign describing their property.

4.     An entry of judgment declaring that the provisions of Section 3.15.4(B) requiring the Malibu Planning Director—or the Commission in its capacity reviewing an amendment application—to determine whether a sign "is not detrimental to the public health, safety, or welfare," that "the size, shape, color, and placement of the sign is compatible with the neighborhood," and that "a proposed sign in close proximity to any residential district does not adversely affect the quality or character of such residential area," transform Malibu's sign permitting process into an unconstitutional prior restraint and therefore are facially unconstitutional.

5.     An entry of judgment declaring that the provisions of Section 3.15.4(B) referenced in the previous paragraph are unconstitutional as applied to Plaintiffs.

6.     An entry of a permanent injunction prohibiting Defendants from enforcing the challenged provisions of LIP Section 3.15.4(B) against Plaintiffs.

7.     An entry of judgment declaring that the indemnification clause contained in the City of Malibu's CDP application form imposes an unconstitutional condition on Plaintiffs' free speech rights.

8.     An entry of judgment declaring that the indemnification clause unconstitutionally infringes Plaintiffs' First Amendment rights.

9.     An entry of a permanent injunction prohibiting Defendant from requiring Plaintiffs to agree to the indemnification clause as a condition of applying for a CDP.

10.    An award of attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988.

11.    An award of any further legal or equitable relief this Court may deem just and proper.

1    DATED: October 20, 2022.

2                                      Respectfully submitted,

3                                      JEREMY TALCOTT
                                       CHRISTOPHER M. KIESER
4

5                                      By s/ Jeremy Talcott
                                          JEREMY TALCOTT
6
                                       *Attorneys for Plaintiffs*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of California by using the Court's CM/ECF system.

I certify that the participants in the case who are registered CM/ECF users will receive service through the Court's CM/ECF system.

I certify that the following is not registered and will be served via first-class U.S. Mail:

Trevor L. Rusin
Best Best & Krieger LLP
300 South Grand Ave., 25th Floor
Los Angeles, CA 90071
*Counsel for Defendant City of Malibu*

s/ Jeremy Talcott
JEREMY TALCOTT