# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS SEIDER and LEAH SEIDER, as Trustees of the Seider Family Trust,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MALIBU, et al,<br><br>Defendants. | Case No. 2:20-cv-08781-SPG-MRW<br><br>**ORDER DENYING THE COMMISSION'S MOTION TO DISMISS AND GRANTING THE CITY'S MOTION TO DISMISS**<br>**[ECF NOS. 79, 82]** |

Before the Court is Defendants John Ainsworth, as Executive Director of the Coastal Commission, and Commissioners Donne Brownsey, Caryl Hart, Dayna Bochco, Effie Turnbull-Sanders, Sara Aminzadeh, Linda Escalante, Mike Wilson, Catherine Rice, Steve Padilla, Meagan Harmon, and Roberto Uranga's (collectively, the "Commission") and the City of Malibu's (the "City") motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 79, 82). Plaintiffs Dennis Seider and Leah Seider oppose. (ECF No. 84). The Court held a hearing on April 26, 2023. Having considered the submissions of the parties, the relevant law, the record in this case, and the arguments of counsel during the hearing, the Court hereby DENIES the Commission's motion and GRANTS the City's motion.

-1-

## I. BACKGROUND

The Court incorporates by reference its recitation of the facts from the prior order in this case granting the City's motion to dismiss Plaintiff's Complaint. *See* (ECF No. 22).

On September 24, 2020, the Seiders commenced this suit against the City, asserting five claims for relief: (1) violation of the First Amendment, on the basis that Section 3.15.3(X) of Malibu's Local Implementation Plan ("LIP") is a content based speech restriction; (2) violation of the First Amendment, on the basis that Section 3.15.4(C) of Malibu's LIP is an unconstitutional prior restraint on speech; (3) unconstitutional condition imposed by the permit application's indemnification clause; (4) unconstitutional infringement on Plaintiffs' free speech rights imposed by the permit application's indemnification clause; and (5) ultra vires. (ECF No. 1). The City moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative to join the Commission as a required party pursuant to Rule 12(b)(7). (ECF No. 13).

On March 1, 2021, the Court, with the Honorable Percy Anderson presiding, granted the City's motion. (ECF No. 22). The Court held that the Commission was a necessary party for Plaintiffs' first two claims under the First Amendment. (*Id.* at 6–8). The Court dismissed the first two claims with leave to amend so that Plaintiffs could join the Commission as a necessary party. (*Id.* at 8–10). The Court also held that Plaintiffs lacked standing to assert their third and fourth claims regarding the indemnification clause and dismissed those claims without leave to amend. (*Id.*). The Court also declined to address the validity of the state law ultra vires claim until Plaintiffs had established subject matter jurisdiction. (*Id.*).

Rather than amend their claims and join the Commission as a necessary party, Plaintiffs filed a notice of declination to amend their complaint and stated they intended to pursue an appeal of the Court's order after the Court entered judgment. (ECF No. 23). The

Court thereby dismissed Plaintiffs' ultra vires claim without prejudice and entered judgment, and Plaintiffs appealed. (ECF Nos. 24, 25, 26).

On June 1, 2022, the Ninth Circuit affirmed in part, vacated in part, and remanded. *Seider as Tr. of Seider Fam. Tr. v. City of Malibu*, No. 21-55293, 2022 WL 1769793 (9th Cir. June 1, 2022). The Ninth Circuit held that the "Commission has primary jurisdiction over Plaintiffs' proposed permit application." *Id.* at *1. "Although the City has primary jurisdiction over many such applications," the court held that the Commission has primary jurisdiction over Plaintiff's "application for a [d]evelopment that would lessen or negate the purpose of any specific permit condition.'" *Id.* (citing LIP § 13.10.2(B)(2)). The Ninth Circuit held that Plaintiffs' "proposed new sign, although legally accurate, would 'lessen' the purpose of maintaining maximum public access to the public parts of the beach because (a) the location of the mean high tide line fluctuates, is not visible, and is unknown to most members of the public, and (b) even if members of the public knew in theory where the mean high tide line is, they would be unable to discern the boundary without resort to sophisticated methods of measurement that they do not bring with them to the beach." *Seider*, 2022 WL 1769793, at *1. The majority concluded that "beachgoers who want to remain on public lands would stay as far away as possible from Plaintiffs' house and would forgo using public portions of the beach." *Id.* Therefore, the Ninth Circuit affirmed the Court's finding that the Commission must be joined under Federal Rule of Civil Procedure 19, given its primary jurisdiction over Plaintiffs' proposed sign, but vacated the dismissal of Plaintiffs' first two causes of action with instructions to require the Commission to be joined as a defendant. *Id.* Lastly, the Ninth Circuit affirmed the dismissal of Plaintiffs' third and fourth causes of action, reasoning that those claims "would arise only if the City were the entity to rule on Plaintiffs' permit application." *Id.* at *2.

Following denial of Plaintiffs' requests for rehearing and hearing en banc, the case was remanded from the Ninth Circuit to this Court. (ECF Nos. 34, 37). The Court then ordered the joinder of the Commission. (ECF No. 38). On October 20, 2022, Plaintiffs

filed the operative First Amended Complaint ("FAC") alleging the same first four causes of action against the City and Commission. (ECF No. 45).

On February 16 and 17, 2023, the Commission and Malibu filed motions to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[1] (ECF Nos. 79 ("Com. Mot."), 82 ("City Mot.")). Plaintiffs opposed on April 5, 2023, (ECF No. 84 ("Opp.")), and Defendants replied on April 12, 2023. (ECF Nos. 85, 86). The Court heard oral argument on April 26, 2023.

## II.  LEGAL STANDARDS

### A.  12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Thus, in a factual 12(b)(1) motion, the Court may consider evidence outside the complaint to resolve factual disputes in the process of determining the existence of subject matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Courts consequently need not presume the truthfulness of a plaintiff's allegations in such

---

[1] Both the Commission and the City have filed unopposed requests for the Court to take judicial notice of various sections of the City's Local Coastal Program and Local Implementation Plan, the City's Planning Department Uniform Application, and a section of the City's municipal code. *See* (ECF Nos. 80, 83). Pursuant to Rule 201 of the Federal Rules of Evidence, the Court finds these matters properly subject to judicial notice and grants the parties' requests for judicial notice. Fed. R. Evid. 201; *see also Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1039, n.2 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial notice.").

instances. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White*, 227 F.3d at 1242). A Rule 12(b)(1) motion will be granted if the complaint, considered in its entirety, fails on its face to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 (9th Cir. 2003).

### B. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). For a plaintiff appearing *pro se*, the Court must construe the allegations of the complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Nor must the Court "assume

the truth of legal conclusions cast in the form of factual allegations." *Lleto v. Glock Inc.*, 349 F.3d 119, 1200 (9th Cir. 2003). Furthermore, despite applying a liberal interpretation to plaintiff's allegations, the Court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## III. DISCUSSION

### A. The Commission's Motion

The Commission argues that Plaintiffs' first and second causes of action should be dismissed because Plaintiffs lack standing having not suffered an injury in fact, their claims are neither constitutionally nor prudentially ripe for adjudication, and Plaintiffs fail to state a claim. (Com. Mot. at 17–24). As Plaintiffs point out, "[t]he constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010). "Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Id.* (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000) (en banc)). Therefore, the Court will consider the Commission's argument regarding standing and constitutional ripeness together.

#### 1. Article III Standing

To invoke federal jurisdiction, Article III of the United States Constitution requires that there be a case or controversy. U.S. Const. art. III, § 2. The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum" of Article III standing requires a plaintiff invoking federal jurisdiction to show that it has: (1) "suffered an injury in fact," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). The three

elements are not mere pleading requirements, but rather an indispensable part of the plaintiff's case. *Lujan*, 504 U.S. at 561. The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* (citations omitted).

"First Amendment cases raise unique standing considerations that tilt dramatically toward a finding of standing." *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir.2010) (internal alterations, citations, and quotation marks omitted). "In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). "Because '[c]onstitutional challenges based on the First Amendment present unique standing considerations,' plaintiffs may establish an injury in fact without first suffering a direct injury from the challenged restriction." *Lopez*, 630 F.3d at 785 (quoting *Bayless*, 320 F.3d at 1006). However, a "chilling of First Amendment rights can constitute a cognizable injury" only "so long as the chilling effect is not based on a fear of future injury that itself is too speculative to confer standing." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020) (internal quotation marks and alterations omitted).

In a pre-enforcement First Amendment case, such as here, "the plaintiff may meet constitutional standing requirements by "demonstrating a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Lopez*, 630 F.3d at 785 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (alteration omitted)). "To show such a "realistic danger," a plaintiff must "allege an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and a credible threat of prosecution thereunder." *Id.* (quoting *Babbitt*, 442 U.S. at 298 (alterations omitted)). In determining whether a plaintiff faces such a credible threat in the First Amendment pre-enforcement context, the Ninth Circuit

has articulated three factors to review: "(1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (quoting *Thomas*, 220 F.3d at 1138–39).

Beginning with the first factor, the Ninth Circuit has held that "pre-enforcement plaintiffs who failed to allege a concrete intent to violate the challenged law could not establish a credible threat of enforcement." *Lopez*, 630 F.3d at 787. Instead, Plaintiffs must allege a plan "that is more than hypothetical." *Wolfson*, 616 F.3d at 1059.

The Commission argues that Plaintiffs have not alleged a "concrete plan" to violate the law.[2] (Com. Mot. at 20). The Court disagrees. Plaintiffs already violated the law—according to the Commission—by displaying unapproved "PRIVATE BEACH" signs on their property and only took down the signs in response to the Commission's threat of enforcement. (FAC ¶ 48; FAC Ex. 3). After Plaintiffs removed the signs, they have remained intent on erecting a new sign that accurately reflects their private property line to assist with an "influx of trespassers who assume the beach behind the house is entirely public." (FAC ¶¶ 53–64). Plaintiffs have corresponded with personnel from the City and Commission regarding how to initiate the Coastal Development Permit ("CDP") application process to seek an amendment to Plaintiffs' CDP. (FAC ¶ 68, FAC Exs. 4, 8). Plaintiffs downloaded the CDP application and began to fill out the form but did not complete the application because they were deterred by a clause within the application requiring them to agree to indemnify the City if in the future a third-party sued the city concerning its grant of the amendment. (FAC ¶¶ 63, 66). As things stand, Plaintiffs still

---

[2] The Commission also argues that Plaintiffs have not alleged a sufficiently concrete plan to violate the law because they have not submitted an application for a CDP amendment. (Com. Mot. at 20). However, "one need not await 'consummation of threatened injury' before challenging a statute restricting speech, to guard the risk that protected conduct will be deterred.'" *Wolfson*, 616 F.3d at 1058 (quoting *Bayless*, 320 F.3d at 1006).

"want to put up a simple, truthful sign on their property demarcating the boundary between unencumbered private property and the easement." (FAC ¶ 2).

At bottom, Plaintiffs have been unwavering in their plan to display a new sign that, although legally accurate, would violate the law because it would "'lessen' the purpose of maintaining maximum public access to the public parts of the beach[.]" *Seider*, 2022 WL 1769793, at *1 (citing LIP § 13.10.2(B)(2)). Thus, Plaintiffs have put forth sufficient allegations so that the Court "need not speculate as to the kinds of political activity the [Plaintiffs] desire to engage in or as to the contents of their proposed public statements or the circumstances of their publication." *Lopez*, 630 F.3d at 787 (internal quotations and citation omitted). *See also id.* (holding that a plaintiff had standing where he "expressed an intention to run for office in the future, and a desire to engage in two kinds of campaign-related conduct that is likely to be prohibited by the Code"); *Santa Monica Food Not Bombs v. City of Santa Monica (Food Not Bombs)*, 450 F.3d 1022, 1034 (9th Cir. 2006) (holding that a plaintiff that organized marches and demonstrations had standing to challenge a Santa Monica ordinance that required it to obtain a permit before engaging in marches or demonstrations); *ACLU v. Heller*, 378 F.3d 979, 984 (9th Cir. 2004) (holding that a group had standing when an individual member alleged he desired to produce and distribute flyers regarding a specific ballot initiative).

Under the second factor, Plaintiffs "need not establish an actual threat of government prosecution." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014). Instead, Plaintiffs "need only demonstrate that a threat of potential enforcement will cause him to self-censor, and not follow through with his concrete plan to engage in protected conduct." *Id.* A government's preliminary efforts to enforce a speech restriction or its past enforcement of a restriction is strong evidence that the pre-enforcement plaintiffs face a credible threat of adverse state action. *Lopez*, 630 F.3d at 786.

Here, the Commission does not dispute that it has communicated a specific threat to initiate proceedings against Plaintiffs under the Coastal Act. On April 29, 2020, the

Commission sent Plaintiffs a notice of violation. (FAC Ex. 3). The letter warned that "[t]he subject signs, in representing that the beach seaward of the property is private, purport to represent the boundary between the state tidelands and the adjacent private property, and thus violate Section 3.15.3 (X)." (*Id.* at 5). The Commission advised Plaintiffs that to "avoid formal enforcement action" Plaintiffs shall remove their "PRIVATE BEACH" signs and submit photographs confirming its removal. (*Id.*). In the event Plaintiffs opted to not remove the signs, the Commission outlined the available enforcement remedies for continued violations of the Coastal Act, including fines of up to $11,250 per day and a penalty amount that "shall not exceed $30,000 and shall not be less than $500 per violation." (*Id.* at 5–6).

Finally, the third factor—past prosecution or enforcement—carries little weight in this case. As in *Wolfson*, the record here "contains little information as to enforcement or interpretation" of the LIP. 616 F.3d at 1060. *see also Tingley*, 47 F.4th at 1069; *Cal. Rifle & Pistol Ass'n, Inc. v. City of Glendale*, No. 2:22-CV-07346-SB-JC, 2022 WL 18142541, at *3 (C.D. Cal. Dec. 5, 2022) (finding the fact that the government had not issued any citations was "not dispositive" because the ordinance was "less than a decade old" and there was no evidence that defendants "have ever been aware of violations and chosen to ignore them"). This factor therefore is neutral in the Court's analysis.

Accordingly, because the first two factors are satisfied based on the allegations in the FAC, which the Court construes as true at this stage in the proceedings, the Court finds that Plaintiffs have met their burden to establish pre-enforcement Article III standing to bring their first and second causes of action against the Commission.

2. Prudential Ripeness[3]

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc.*

---

[3] In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), the Supreme Court "cast doubt on the prudential component of ripeness," identifying prudential ripeness as "in some tension" with "the principle that a federal court's obligation to hear and decide cases within

-10-

*Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). In assessing prudential ripeness, courts "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (citation omitted). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999) (quoting *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989)). "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (quoting *US W. Commc'ns*, 193 F.3d at 1118).

The Commission argues that Plaintiffs' claims are not fit for adjudication because they are premised hypothetically on a "contingent future event" that makes this case unfit for judicial intervention. (Com. Mot. at 21). Specifically, Plaintiffs would need to apply for a CDP, then either the City or the Commission would need to consider the CDP application. Should either the City or the Commission deny the CDP, only then would Plaintiffs' claims be ripe for review.[4] (*Id.* at 21–22). In other words, the Commission claims that the only way Plaintiffs' claims can be prudentially ripe is if Plaintiffs file their proposed application. However, under the Commission's "line of reasoning, virtually all pre-enforcement cases would be non-justiciable on prudential ripeness grounds." *Cnty. of* 

---

its jurisdiction is virtually unflagging." *Clark v. City of Seattle*, 899 F.3d 802, 809 n.4 (9th Cir. 2018) (quoting *Driehaus*, 573 U.S. at 167). Because the Supreme Court "has not yet had a occasion to 'resolve the continuing vitality of the prudential ripeness doctrine,'" the Court considers its application here. *See Fowler v. Gueri*n, 899 F.3d 1112, 1116–18, 1116 n.1 (9th Cir. 2018) (quoting *Driehaus*, 573 U.S. at 167).

[4] Alternatively, if the City approves a CDP, that action could be appealed to the Commission. If the Commission denies the CDP application upon a de novo review, then, according to the Commission, Plaintiffs' claims would be prudentially ripe for review. (Com. Mot. at 22).

*Santa Clara v. Trump*, 250 F. Supp. 3d 497, 529 (N.D. Cal. 2017). The "contingent future events" the Commission identifies "are always at issue in a pre-enforcement case; before actual enforcement occurs the enforcing agency must determine what the statute means and to whom it applies." *Id.* In fact, the Commission has already determined what section 13166 means and to whom it applies: the Commission made clear that signs "which purport to identify the boundary between State tidelands, and private property shall not be permitted" and made clear that the "Commission staff must reject an application to amend a previously issued CDP if that amendment would lessen the intended effect of the previously issued CDP." *See* (FAC Ex. 3 at 4–5).

Moreover, the Commission's argument cannot be squared with the Ninth Circuit's decision in this case or the plain language of the pertinent LIP sections. The Ninth Circuit held that Plaintiffs' "proposed new sign, although legally accurate, would 'lessen' the purpose of maintaining maximum public access to the public parts of the beach because (a) the location of the mean high tide line fluctuates, is not visible, and is unknown to most members of the public, and (b) even if members of the public knew in theory where the mean high tide line is, they would be unable to discern the boundary without resort to sophisticated methods of measurement that they do not bring with them to the beach." *Seider*, 2022 WL 1769793, at *1. The majority concluded that "beachgoers who want to remain on public lands would stay as far away as possible from Plaintiffs' house and would forgo using public portions of the beach." *Id.* This Court is bound by the Ninth Circuit's decision in this case. Thus, Plaintiffs' proposed sign would "lessen" the intended effect of the 1976 CDP. It follows that the Commission would necessarily reject Plaintiffs' application for a CDP amendment pursuant to California Code of Regulations section 13166(a), which provides that the Commission "shall reject" any application to amend a Commission-issued CDP that "would lessen or avoid the intended effect of an approved"

CDP condition.[5]  Cal. Code Regs. tit. 14, § 13166(a).  The Court therefore finds that Plaintiffs' claims are not unduly speculative because, if Plaintiffs were to apply for a CDP, the Commission would exercise its primary jurisdiction to reject Plaintiffs' proposed amendment, given that it would lessen the intended effect of a CDP.  Accordingly, Plaintiffs' claims that the City's LIP sections 3.15.3(X) and 3.15.4(C) violate the First Amendment are fit for decision because, at this point, those claims are primarily legal and do not require substantial further factual development.  *See Wolfson*, 616 F.3d at 1060.

As for Plaintiffs' hardship should the Court withhold consideration of their claims, Plaintiffs have alleged that they suffer the loss of their First Amendment freedoms to demarcate their personal property, which has caused them to withstand "an influx of trespassers who assume the beach behind the house is entirely public." (Opp. at 18–19; FAC ¶ 58).  This factor is therefore met because, without a decision, Plaintiffs would be forced to choose between allowing public beachgoers to trespass on their property or face substantial fines from the Commission for violating the City's ordinance.  And, given the Commission's notice of violation, there is no question that they face a credible threat of prosecution if they were to erect their proposed sign.  *Cf. San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1132–33 (9th Cir. 1996) (explaining that when "none of the plaintiffs have been charged under the [challenged] Act with any criminal violation" and did not "face a credible threat of prosecution," they could not demonstrate hardship

---

[5] In a footnote, the Commission argues that it would not necessarily reject Plaintiffs' proposal for a legally accurate sign if Plaintiffs were to present newly discovered information. (Com. Mot. at 24 n.7).  Under California Code of Regulations, title 14, section 13166(a), the Commission's Executive Director must reject a CDP application that would lessen the intended effect of a permit, unless "the applicant presents newly discovered material information, which the applicant could not, with reasonable diligence, have discovered and produced before the permit was granted."  The Commission argues it is "possible" that Plaintiffs could present such qualifying information.  However, Plaintiffs' have attested that they "have no such information." (Opp. at 18).

sufficient to warrant jurisdiction). Accordingly, Plaintiffs have demonstrated that their claims are prudentially ripe for review.

### 3. Adequacy of Pleading Under Rule 12(b)(6)

Lastly, the Commission argues that Plaintiffs fail to state a First Amendment claim because they do not allege any actions that any of the named Commission members took. (Comm. Mot. at 25). However, the Commission's argument under Rule 12(b)(6) simply repackages its argument under Rule 12(b)(1) without further support. The fact that the Commission has not taken any action against Plaintiffs, without more, cannot alone serve as the basis for dismissal of Plaintiffs' pre-enforcement First Amendment claims. If that were the case, the Supreme Court's "hold your tongue and challenge now" approach would be rendered meaningless. *See Bayless*, 320 F.3d at 1006.

### B. The City's Motion

A key component of Article III standing is "traceability, i.e., a causal connection between the injury and the actions" about which a plaintiff complains. *Easter v. Am. W. Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004) (holding that plaintiffs who could not trace injury to a particular defendant did not have standing to sue that defendant). Thus, in cases "where there are multiple defendants and multiple claims," the plaintiff must demonstrate Article III standing "as to each defendant and each claim." *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015); *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.")

Here, the Ninth Circuit held that the Commission has primary jurisdiction over Plaintiffs' proposed sign. Nevertheless, Plaintiffs still argue that the City "holds primary permitting authority." (Opp. at 22). Because of its "primary permitting authority," Plaintiffs assert that they have standing to sue the City. However, this argument cannot be reconciled with the Ninth Circuit's finding that "[t]he Commission has primary jurisdiction over Plaintiffs' proposed permit application." *Seider*, 2022 WL 1769793, at *1. As the

Ninth Circuit explained, the City exercises primary jurisdiction over certain applications under its LIP, but not over Plaintiffs' proposed application because it would "lessen or negate the purpose of any specific permit condition. *Id.* (citing LIP § 13.10.2(B)(2)).[6] Therefore, because the Commission—not the City—is "the entity to rule on Plaintiffs' permit application," Plaintiffs lack standing to bring their pre-enforcement First Amendment claims against the City.[7] *See Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, No. 1:18-cv-01505-NONE-BAM, 2022 WL 138601, at *14 (E.D. Cal. Jan. 14, 2022) (finding plaintiffs lacked standing to bring a pre-enforcement claim against a government entity that had transferred its authority to enforce the regulations at issue); *Bronson v. Swenson*, 500 F.3d 1099, 1110 (10th Cir. 2007) ("It is well-established that when a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision.").[8]

---

[6] The Court also notes that the Ninth Circuit affirmed dismissal of Plaintiffs' third and fourth causes of action against the City's indemnification clause as unripe because those claims "would arise only if the City were the entity to rule on Plaintiffs' permit application." *Id.* at *2. The Ninth Circuit's reasoning applies with equal force to Plaintiffs' first and second causes of action against the City because those claims, too, "would arise only if the City were the entity to rule on Plaintiffs' permit application."

[7] Plaintiffs alternatively argue that, "even if this Court believes that the City has no role whatsoever to play in the Seiders' desired CDP, it must remain a party" because Malibu has a "strong interest in the constitutionality of the LCP that it must apply and enforce, and the LCP may not be amended or altered without legislative action initiated by the City." (Opp. at 23). However, a "strong interest" in the outcome of a case does not bestow Article III standing, and Plaintiffs fail to cite any authority supporting the proposition that a municipality's "strong interest" in the constitutionality of a statute somehow is enough to bestow standing. Therefore, the Court rejects Plaintiffs' argument that they have Article III standing to sue the City regarding a proposed application for which the Commission has primary jurisdiction to decide based on the City's purported "strong interest" in the outcome of this case.

[8] The Court also rejects Plaintiffs' argument that the City's continued presence is required for them to obtain complete relief. *See* (Opp. at 23). As noted in the Ninth Circuit's dissent, Plaintiffs seek "merely declaratory and injunctive relief that, if granted, would give them

IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** the Commission's motion to dismiss and **GRANTS** the City's motion to dismiss.

**IT IS SO ORDERED.**

DATED: May 2, 2023

                                       HON. SHERILYN PEACE GARNETT
                                       UNITED STATES DISTRICT JUDGE

---

the opportunity to apply for a permit free of the assertedly unconstitutional provisions of the LIP." 2022 WL 1769793, at *4 (Collins, J., dissenting). As Plaintiffs acknowledge, the hypothetical scenario that Plaintiffs may need to apply for a new CDP rather than an amendment to the existing 1976 CDP "remains somewhat unclear." (Opp. at 23). "If in the future [P]laintiffs believe that other officials are acting in violation of federal law, they may bring another action against those officials." *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012).